AUREO E. RIVERA, ETC., ET AL., demandantes y apelantes, *v.* SECURITY NATIONAL LIFE INSURANCE CO., demandada y apelada.

*Número:* O-76-79 *Resuelto:* 21 de noviembre de 1977

518

*George L. Weasler* y *Joseph Calderón Cruz,* abogados de los apelantes; *Ríos, Gómez, Machargo & Bustelo,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR MARTÍN emitió la opinión del Tribunal.

El demandante y apelante, Aureo E. Rivera, comenzó a trabajar con Security National Life Insurance Co. (en adelante la demandada) como agente de seguros en octubre de 1971. Unos meses más tarde el demandante realizó gestiones cerca de algunos compañeros de trabajo con el propósito de obtener firmas en apoyo de una solicitud de representación de una unión obrera. Tras enterarse de dicha actividad gremial la demandada lo despidió de su empleo.

A raíz del despido el demandante invocó su derecho bajo

la ley federal aplicable(¹) `presentando ante la Junta Nacional de Relaciones del Trabajo (en adelante "la Junta Nacional") una querella sobre prácticas ilícitas del trabajo contra la demandada, cuya querella fue sometida a arbitraje. El árbitro de la Junta dictó el laudo en el caso *Security National Life Insurance Co.* v. *Unión Nacional de Trabajadores*, núm. 24-CA-3148, que contenía las determinaciones siguientes:

"La querellada es una corporación doméstica dedicada al negocio de seguros y a inversiones en bienes raíces en Puerto Rico y las Islas Vírgenes. Durante el pasado año recibió, en el curso de sus operaciones de negocios, primas sobre pólizas de seguro cuyo valor excedía de $500,000, de los cuales más de $50,000 provenía de pólizas de fuera de Puerto Rico. Durante el mismo período recibió más de $99,000 de fuentes de reaseguro de fuera de Puerto Rico, y pagó en reclamaciones sobre pólizas en exceso de $1,000,000, de las cuales más de $5,000 fueron pagadas a beneficiarios fuera de Puerto Rico.

La querellada acepta todo lo anterior, pero sostiene que la Ley [de Relaciones del Trabajo Federal] no es aplicable al Estado Libre Asociado de Puerto Rico. La Junta, sin embargo, falló esta cuestión contra la querellada. Toda vez que las operaciones de la querellada reúnen los requisitos jurisdiccionales pertinentes de la Junta, los que son aplicables a Puerto Rico, concluyó que la querellada está dedicada al comercio dentro del significado de la sec. 2(6) y (7) de la Ley, y que la asunción de jurisdicción en este procedimiento logrará los propósitos de la Ley." (Traducción del inglés nuestra.)

La Junta Nacional confirmó en apelación la decisión del árbitro y adoptó la recomendación de éste, en opinión rendida en 7 de diciembre de 1972, *Security National Life Insurance Co.*, 202 N.L.R.B. 374 (1973), confirmada en *National Labor Relations Board* v. *Security National Life Insurance Co.*, 494

---

(¹) La ley conocida como *"Labor-Management Relations Act of 1947"* (en adelante "Ley de Relaciones del Trabajo Federal") protege el derecho de los empleados a organizarse y a formar, unirse y ayudar uniones obreras y declara ilegales los actos de los patronos que impidan el ejercicio de ese derecho. 29 U.S.C.A. secs. 157, 158.

F.2d 336 (1st Cir. 1974). Quedó pues en pie la orden de la Junta Nacional concediendo al empleado los remedios que dispone la Ley Federal de Relaciones del Trabajo, ordenando al patrono a cesar y desistir de despedir empleados que apoyen, participen o formen parte de la Unión Nacional de Trabajadores o de cualquier otra unión. Ordenó además la reinstalación del demandante a su antiguo empleo, y de no existir tal empleo a un empleo sustancialmente equivalente. Como remedio compensatorio económico ordenó el pago de la compensación a que tuviere derecho el empleado durante el tiempo que estuvo fuera de su empleo, más los intereses legales.

La demandada ofreció reemplearle en una posición similar a la que tenía antes del despido, pero no en la fase del negocio de seguro industrial en la que antes trabajaba el demandante, ya que la compañía había abandonado esa fase del negocio. El demandante renunció entonces a la reinstalación como empleado de *Security National*.

Posteriormente el demandante presentó ante el Tribunal Superior una demanda contra la demandada en la que solicitaba daños y perjuicios principalmente por los sufrimientos mentales y morales sufridos por él, su esposa y sus tres hijos menores de edad como consecuencia del despido de su trabajo en 6 de marzo de 1972, cuyos daños ascendentes a $160,500 alegadamente surgen de la misma conducta ilegal de la demandada. En apoyo de su reclamación aduce que la adjudicación de los daños solicitados estaba fuera del alcance y jurisdicción de la Junta Nacional.

La demandada presentó una solicitud de sentencia sumaria en la que impugnaba la jurisdicción del Tribunal Superior para considerar la reclamación de daños y perjuicios por ser ello de la jurisdicción exclusiva de la Junta Nacional bajo la *Labor-Management Relations Act of 1947*, según enmendada, 29 U.S.C.A. secs. 141–97, y por no estar enmarcada dicha reclamación dentro de las excepciones jurisdiccionales creadas por el Tribunal Supremo de Estados Unidos. El demandante

no compareció por escrito ni personalmente a la vista señalada para la discusión de la solicitud de Sentencia Sumaria. Cinco días después de celebrada la vista el demandante presentó una oposición a la sentencia sumaria, que el tribunal tomó en consideración.

El tribunal de instancia declaró con lugar la solicitud de Sentencia Sumaria al resolver que la acción de la demandada era el producto de una práctica ilícita de trabajo que cae bajo la jurisdicción de la Junta Nacional de Relaciones del Trabajo, y que no están presentes las razones excepcionales estatuidas por la Ley Federal de Relaciones del Trabajo o de las reconocidas jurisprudencialmente para que el tribunal estatal pudiese adquirir jurisdicción. El demandante acudió ante nos en apelación por entender que está planteada una cuestión constitucional.

Nos toca resolver si los tribunales estatales tienen jurisdicción para compensar por sufrimientos y angustias mentales ocasionados a un trabajador y sus familiares, como consecuencia de un despido ilegal en violación del *Labor-Management Relations Act of 1947* (por práctica ilícita del trabajo cometida por el patrono) y quien ya ha obtenido todo el remedio que le concede la mencionada ley, inclusive el de compensación por salarios dejados de percibir mientras estuvo despedido.

■ No cabe duda, ni se cuestiona en este recurso, que la ley federal conocida como *"Labor-Management Relations Act of 1947"*, supra, es de aplicación a Puerto Rico. Véanse: Ley de Relaciones Federales con Puerto Rico, Sec. 9, 48 U.S.C.A. sec. 734; *N.L.R.B.* v. *Security National Life Insurance Co.*, 494 F.2d 336 (1st Cir. 1974).

■ En el caso que nos ocupa la Junta Nacional de Relaciones del Trabajo tiene jurisdicción sobre la conducta constitutiva de la práctica ilícita objeto de este pleito y optó por ejercer dicha jurisdicción a petición de la propia demandada en este recurso, por estar presentes los criterios jurisdic-

cionales sentados por la Junta Nacional en *Jonesboro Grain Drying Cooperative*, 110 N.L.R.B. 481, 483–84 (1954), los que son de aplicación a Puerto Rico. *Conrado Forestier d/b/a Cantera Providencia*, 111 N.L.R.B. 848; véase el laudo en *Security National Life Insurance Co.* v. *Unión Nacional de Trabajadores*, núm. 24-CA-3148, 202 N.L.R.B. 374.

■ Reiteradamente el Tribunal Supremo de Estados Unidos ha sostenido que un Estado (entiéndase también Puerto Rico) no tiene facultad para intervenir en asuntos que caen bajo la jurisdicción de la Junta Nacional de Relaciones del Trabajo. *Guss* v. *Utah Labor Board*, 353 U.S. 1 (1957); *Meat Cutters* v. *Fairlawn Meats*, 353 U.S. 20 (1957); *Garner* v. *Teamsters Union*, 346 U.S. 485 (1953); *Weber* v. *Anheuser Busch, Inc.*, 348 U.S. 468 (1955); *Machinists* v. *Wisconsin Emp. Rel. Comm'n*, 427 U.S. 132 (1976).

■ Los principios constitucionales de la teoría de la ocupación del campo han sido desarrollados para evitar la reglamentación conflictiva de la conducta de varios organismos oficiales que puedan tener alguna facultad sobre una materia específica. Véase *Motor Coach Employees* v. *Lockridge*, 403 U.S. 274, 285–6 (1971). Esta norma reiterada responde al interés del Congreso de evitar posibles conflictos de interpretación en la aplicación y administración de una política laboral uniforme. ([2])

■ Independientemente de la jurisdicción concedídale a la Junta Nacional, se ha permitido por vía de excepción que un Estado en el ejercicio de su poder de policía puede tomar las medidas necesarias para mantener el orden y la seguridad pública. De ahí que un Estado tenga autoridad para conceder un *injunction* y hasta daños cuando la conducta reprensible constituya violencia o sea de naturaleza criminal. *San Diego Unions* v. *Garmon*, 359 U.S. 236 (1959); *United Workers* v.

---

([2]) En nuestra jurisdicción adoptamos la misma doctrina en *P.R. Telephone* v. *Junta Rel. Trabajo*, 86 D.P.R. 382 (1962).

*Laburnum Corp.*, 347 U.S. 656 (1954). La propia Ley Federal de Relaciones del Trabajo crea otras excepciones: (1) la Sec. 307 autoriza acciones por violaciones a un convenio colectivo, aunque dicha violación constituya también una práctica ilícita del trabajo; (2) la Sec. 303 autoriza acciones por daños en casos de ciertas huelgas ilegales o boicots. El Tribunal Supremo de los Estados Unidos ha sostenido además que la ley federal que gobierna las relaciones del trabajo no le retira a los estados el poder de reglamentación cuando la actividad regulada es de carácter marginal (*peripheral*) a las actividades reguladas por la Ley Federal. En *Machinists* v. *Gonzales*, 356 U.S. 617 (1958), por ejemplo, un tribunal de California sostuvo la concesión de daños a un miembro de una Unión que fuera expulsado ilegalmente por ésta en violación del reglamento interno de la Unión, sin que mediase violencia. El pronunciamiento en ese caso, sin embargo, debe limitarse a sus propios hechos. Se contraía a la determinación de asuntos puramente internos relacionados con la interpretación de la constitución y reglamento interno de una unión obrera y los derechos de un miembro de la unión a la luz de dichos documentos, y no la conducta discriminatoria que condena la Ley entre patrono y empleado. En otras palabras, los procedimientos ante el tribunal local envolvían arbitrariedad y conducta impropia entre trabajadores unionados y su Unión, mientras que la Junta Nacional se preocupa principalmente por la relación entre la acción de la unión y el discrimen patronal luego de la expulsión. *Id.*, págs. 622–23.

Posteriormente, en *Plumbers' Union* v. *Borden*, 373 U.S. 690 (1963), y en *Iron Workers* v. *Perko*, 373 U.S. 701 (1963), se reconoció que la regla establecida en *Gonzales*, supra, que permite la intervención de los tribunales estatales, habría de limitarse a casos en que solamente estuviesen en cuestión materias puramente internas de una Unión.

■ Asimismo se ha resuelto que en tanto en cuanto el Congreso no haya establecido un procedimiento para entender

en las consecuencias de conducta torticera se aplicará el procedimiento estatal para recobrar daños por tal conducta. *United Workers* v. *Laburnum Corp.*, 347 U.S. 656 (1954). En *Laburnum* se trataba de una unión de trabajadores que, sin tener relación contractual con el patrono afectado ni con sus empleados incurrió en conducta torticera contra el referido patrono consistente en amenazar e intimidar al patrono y a sus empleados con violencia hasta el extremo que el patrono y sus subcontratistas fueron forzados a abandonar sus proyectos de construcción en cierta área con las consiguientes pérdidas económicas. El Tribunal Supremo federal asumió para los fines de la opinión que la conducta descrita constituía una práctica ilícita del trabajo. El patrono sostenía que dicha ley federal había ocupado el campo por lo que la Junta Nacional era el único organismo con jurisdicción en el asunto. El Tribunal Supremo federal concluyó que el Congreso no había establecido ni sugerido ningún sustituto para el procedimiento tradicional existente a través de las cortes estatales para recobrar daños por conducta torticera. *Id.*, págs. 663–664. La privación de ese derecho a ser compensado, añade el Tribunal Supremo, constituiría una concesión de inmunidad a la Unión demandada por su conducta torticera. *Id.*, pág. 664.

Es interesante notar, sin embargo, la siguiente expresión del tribunal en *Laburnum* que parece limitar la compensación a un trabajador despedido a la concedida por la Ley Federal de Relaciones del Trabajo:

"La 'Labor-Management Relations Act' no establece ningún procedimiento general compensatorio excepto en ciertas formas menores suplementarias como la reposición de los empleados despedidos ilegalmente con la consiguiente paga por el tiempo que estuvieron fuera del empleo." Pág. 665.

Asumiendo argüendo que reconociéramos que la Ley Federal de Relaciones del Trabajo al conceder compensación económica al empleado despedido no excluye el derecho que pueda

tener éste de solicitar ante los tribunales estatales daños por sufrimientos mentales y angustias que resultaren con motivo del despido ilegal, debemos determinar si bajo nuestro estado de derecho cabe tal reclamación.

En circunstancias similares a la del demandante, nuestra ley local le da el derecho a organizarse para propósitos gremiales, y a constituir, afiliarse o ayudar a organizaciones obreras. 29 L.P.R.A. sec. 65. El patrono que intervenga con esos derechos incurre en práctica ilícita del trabajo. *Id.*, Sec. 69. La Junta de Relaciones del Trabajo de Puerto Rico, al igual que la Junta Federal, tiene facultad para evitar que cualquier persona se dedique a prácticas ilícitas. *Id.*, Sec. 68. De concluir la Junta que el patrono ha incurrido en una práctica ilícita al despedir un trabajador por estar dedicado a actividades gremiales puede requerirle que cese en y desista de dicha práctica y ordenar su reposición, y abonándose o no la paga suspendida. *Id.*, Sec. 70. Lo anterior constituye el remedio que concede la ley al empleado en casos de despido que constituya una práctica ilícita. El patrono, por otro lado, es penalizado criminalmente por suspender a un empleado que haya participado en actividades relacionadas con la organización de sus compañeros de trabajo para mejorar sus condiciones de trabajo. 29 L.P.R.A. sec. 41. Véanse, Constitución del Estado Libre Asociado de Puerto Rico, Art. II, Sec. 17; 29 L.P.R.A. sec. 65. No existe disposición alguna en nuestro ordenamiento jurídico que provea al empleado despedido ningún otro remedio, ni castigo otro alguno al patrono al incurrir en violación del derecho del empleado a organizarse para mejorar sus condiciones de trabajo, que las sanciones penales y compensatorias mencionadas precedentemente.

Por vía de excepción las leyes del trabajo reconocen responsabilidad civil solamente en casos de suspensión de un empleado porque esté afiliado a determinado partido político por los daños pecuniarios sufridos por el empleado suspendido. *Id.*, Sec. 136.

 En los casos ordinarios de suspensión de empleo por causa injustificada tampoco se exige responsabilidad civil al patrono. Este solamente viene obligado a pagar, en adición al sueldo devengado, el sueldo correspondiente a un mes por concepto de indemnización. Ley Núm. 50, abril 20, 1949, pág. 127, Art. 1.(³) Ni siquiera existe el remedio de reposición en estos casos. Estos remedios naturalmente no excluyen la responsabilidad civil de un patrono por conducta torticera en que incurriere por otros motivos que no sean la mera violación de una disposición de las leyes del trabajo. 31 L.P.R.A. sec. 5141. No se nos ha demostrado, sin embargo, que en este caso el patrono hubiese incurrido en conducta torticera, más allá del acto del despido, que le sujete a responsabilidad por culpa o negligencia. Resolvemos pues que el único remedio compensatorio en relación con el despido de un empleado contratado sin tiempo determinado, en violación de las Secs. 7 y 8 de la Ley Federal de Relaciones del Trabajo, es el que provee expresamente dicha Ley. Nuestro legislador no ha provisto otro remedio para ello.

Por los fundamentos expuestos, *se confirmará la sentencia del Tribunal Superior, Sala de San Juan, dictada el 30 de diciembre de 1975, en el caso civil número 75-2474, que declaró sin lugar la demanda.*

Los Jueces Asociados Señores Dávila y Negrón García concurren en el resultado. El Juez Asociado Señor Rigau no intervino.

---

(³) Actualmente el remedio ha sido ampliado para añadir "una indemnización progresiva adicional equivalente a una semana por cada año de servicio." 29 L.P.R.A. secs. 185a–185i.