## In re EL SAN JUAN HOTEL CORP., Debtor.

**Marshall J. KAGAN, Plaintiff–Appellant,**

**v.**

**EL SAN JUAN HOTEL CORP.; Hector Rodriguez–Estrada; Hans Lopez–Stubbe; Rodrigo Otero–Bigles, et al., Defendants–Appellees.**

Civ. No. 92–1940 (JAF).
Bankruptcy No. 80–00259 (SEK).
Adv. No. 83–0183.

United States District Court,
D. Puerto Rico.

Dec. 29, 1992.

cessor trustee owed no fiduciary duty requiring him to write plaintiff letters of recommendation and provide compensation for plaintiff's termination, and whether the bankruptcy court erred in finding that it had no authority to hear the claims against the estate's attorney on both the issues of his fiduciary duty to plaintiff and plaintiff's claim that he provided false information to the court. We find that the bankruptcy court correctly determined that section 185a is plaintiff's sole remedy under Puerto Rico law. We find that neither the successor trustee nor the estate's attorney owed a fiduciary duty to the plaintiff. We also find that plaintiff had no standing to bring an action under 11 U.S.C. § 327 regarding the appointment of the estate's attorney. This court has appellate jurisdiction under 28 U.S.C. § 157.

Marshall J. Kagan, pro se.

Daniel R. Domínguez, Carmen Irizarry de Domínguez, Dominguez & Totti, San Juan, PR, for El San Juan Hotel Corp. & Lopez–Stubbe.

Carlos A. Quilichini, San Juan, PR for Rodrigo Otero–Bigles.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiff is appealing an order entered by the bankruptcy court on March 26, 1992, awarding him compensation for discharge from employment without just cause under 29 L.P.R.A. § 185a. Plaintiff is not appealing the severance pay award, but rather the court's determination that this state statute is his only compensatory remedy, excluding other substantial monetary amounts of damage allegedly suffered. In addition, plaintiff-appellant raises two additional issues on appeal: whether the bankruptcy court erred in finding that the suc-

## I.

### FACTS

This case involves two interconnected episodes. One is the account of the bankruptcy of the El San Juan Hotel. Plaintiff, Mr. Kagan, was involved in uncovering the corruption which pervaded that bankruptcy. The other story is that of plaintiff's termination from his position as comptroller of the El San Juan Hotel. That is the topic of this suit. However, the two episodes are so tangled that it is difficult to sort one from the other. We must sketch the outlines of the first episode to make the second story comprehensible.

A. *The Bankruptcy of the El San Juan Hotel*

Plaintiff, a certified public accountant, was the comptroller of the El San Juan Hotel when it filed for Chapter 11 bankruptcy in May of 1980. At the time of the filing of the petition for bankruptcy, the plaintiff had been working for the hotel for less than a year, having been hired for an indefinite term. In the context of the Chapter 11 bankruptcy, the hotel continued its normal operation under the auspices of the court-appointed trustee according to law. 11 U.S.C. §§ 1101–1146. Plaintiff

continued in his job as comptroller until he was terminated by the court-appointed trustee, Héctor Rodríguez–Estrada, for unsatisfactory performance. Plaintiff claims that he was dismissed in retaliation for his attempts to have the trusteeship of Rodríguez–Estrada investigated and that he should be compensated for the harm done to him by the dismissal.

### 1. The Corrupt Trusteeship of Rodríguez–Estrada

Rodríguez–Estrada was appointed as trustee for the estate of the El San Juan Hotel on July 11, 1980. From the beginning, Rodríguez–Estrada and the plaintiff had disagreements as to how to manage the estate. Subsequent litigation revealed Rodríguez–Estrada's management strategy to have been an abuse of Rodríguez–Estrada's trusteeship. *In re San Juan Hotel Corp.*, 71 B.R. 413 (D.P.R.1987), *aff'd in part*, 847 F.2d 931 (1st Cir.1988). "The ... trustee, Rodríguez–Estrada, seeking personal gain, and by willful, deliberate, intentional, and reckless conduct, disregarding the impact his actions and omissions would have upon the debtor's estate, failed to follow the advice of the hotel comptroller, Marshall J. Kagan, on proposed actions which could have substantially reduced operating expenses." *Id.* at 420. These disagreements caused plaintiff to begin pressing for the investigation of Rodríguez–Estrada's trusteeship. Plaintiff represents his role in exposing the corruption of the trusteeship of Rodríguez–Estrada as having been substantial. It is certainly true that plaintiff's complaints contributed to the investigation of the trustee. Plaintiff alleges he was terminated shortly after he gave testimony before the Puerto Rico House of Representatives' Committee on Tourism. His televised statements were highly critical of the trusteeship of Rodríguez–Estrada. Plaintiff was terminated on December 29, 1982 for unsatisfactory performance. He filed suit for slander and wrongful termination against Rodríguez–Estrada and the estate in bankruptcy court on March 10, 1983.

The fortunes of the hotel continued to decline under the trusteeship of Rodríguez–Estrada. At the end of March of 1983, the hotel closed to the public. On March 24, 1983, the financial condition of the hotel being unstable, the Chapter 11 proceeding was converted to a Chapter 7 proceeding on the motion of Puerto Rico Electric Power Authority. Rodríguez–Estrada acted as the Chapter 7 liquidation trustee until September of 1983, when he was removed from the trusteeship by a unanimous vote of the creditors at a section 341 creditors' meeting plaintiff alleges he arranged. Plaintiff, having an outstanding lawsuit, was a creditor and presumably allowed to participate in creditors' meetings. It is clear from the record that he was determined to oust Rodríguez–Estrada. Rodríguez–Estrada was replaced as trustee by Hans López–Stubbe.

### 2. The Cautious Trusteeship of López–Stubbe

It was under the trusteeship of López–Stubbe that the question of whether an action should be filed against Rodríguez–Estrada first arose. Plaintiff actively lobbied various people related to the estate to bring suit against Rodríguez–Estrada. When plaintiff urged López–Stubbe to file suit against Rodríguez–Estrada for abuse of his position as trustee, López–Stubbe refused. Plaintiff corresponded with López–Stubbe during this period. On December 29, 1983, the anniversary of his termination, he wrote to López–Stubbe, exhorting him to take action in accordance with information Kagan had provided. On January 3, 1984, Rodrigo Otero–Bigles, the estate's attorney, wrote to Kagan on behalf of López–Stubbe, in response to the letter. In that letter, the trustee stated that it was his opinion that there was not sufficient evidence to sustain an action against Rodríguez–Estrada. The trustee's refusal may have been based upon the advice of Otero–Bigles, who was appointed by López–Stubbe in his capacity as trustee. Kagan accused Otero–Bigles of representing the interests of Rodríguez–Estrada in recommending that the trustee not bring suit against the former trustee. During this period, Otero–Bigles was apparently repre-

senting Rodríguez–Estrada in another matter before the bankruptcy court. Otero–Bigles had submitted an affidavit representing to the court that he was "disinterested" as required by 11 U.S.C. § 327, and the court had approved his appointment. Plaintiff's accusation of bias on the part of Otero–Bigles led to harsh words between him and Otero–Bigles. Plaintiff maintained that not only did Otero–Bigles violate the bankruptcy code, but that he, together with López–Stubbe, was involved in a cover-up to protect Rodríguez–Estrada.

The controversy of whether or not to prosecute Rodríguez–Estrada ended in a flurry of lawsuits. The United States, one of the estate's largest creditors, brought suit against Rodríguez–Estrada on behalf of the estate. It was granted the authority to file an action by order of the bankruptcy court on April 17, 1985. On May 17, 1985, the United States filed an action referred to as *San Juan Hotel I.* Around the same time, Kagan was contemplating a suit on behalf of the estate. López–Stubbe's "Trustee's Report to the Court" of May 16, 1985 sketched out the increasingly hostile disagreement between the estate's representatives and Kagan on the issue of whether to file suit. It ended with the opinion of the trustee that the evidence was insufficient to sustain a lawsuit. Kagan felt López–Stubbe was improperly refusing to bring suit. Kagan filed a motion with the bankruptcy court requesting authorization to file suit on behalf of the estate. This was granted and, on October 7, 1985, Kagan filed on behalf of the estate, an action referred to as *San Juan Hotel II.* *San Juan Hotel II* was opposed by the trustee, López–Stubbe, as duplicative, and was dismissed on March 17, 1987 for that reason. *See In re El San Juan Hotel Corporation,* 841 F.2d 6 (1st Cir.1988). *San Juan Hotel I,* the suit brought by the United States, ended on March 4, 1987, when the court imposed a judgment on Rodríguez–Estrada in the amount of $2,137,639.60. *In re San Juan Hotel Corp.,* 71 B.R. 413 (D.P.R.1987), *aff'd in part and reversed in part, In re San Juan Hotel Corp.,* 847 F.2d 931 (1st Cir. 1988). In a subsequent criminal case, Rod-

ríguez–Estrada was convicted for fraud and sentenced on September 9, 1988.

B. *The History of Kagan's Wrongful Termination*

1. The Factual History

The second episode is that of plaintiff's termination from his position as comptroller on December 29, 1982 by Rodríguez–Estrada, for unsatisfactory performance. At the time of plaintiff's termination, Rodríguez–Estrada placed a letter in Kagan's personnel file indicating that he was terminated for his failure to perform adequately. Rodríguez–Estrada also made critical statements regarding plaintiff's behavior which were published by the press. Plaintiff alleges that these statements and the letter in his file made it difficult for him to obtain another job.

When plaintiff sought to meet with Rodríguez–Estrada, he was never available. Plaintiff wanted to protest the circumstances of his dismissal and demand the removal of the letter from his file. Rodríguez–Estrada did eventually meet with plaintiff to discuss plaintiff's termination. However, only he and Mr. Kagan knew what occurred in the meeting. No record of what occurred in the meeting was ever produced. According to plaintiff, at this meeting Rodríguez–Estrada agreed to destroy the December 29th letter of dismissal and substitute another letter. Plaintiff also claims that Rodríguez–Estrada agreed to pay plaintiff the amount of severance pay plaintiff was requesting. Needless to say, none of those things were ever accomplished. It was at this point that plaintiff filed the suit now before us.

After the dismissal of Rodríguez–Estrada and the appointment of López–Stubbe, plaintiff amended his suit to include López–Stubbe. Plaintiff's primary assertion against López–Stubbe is that as successor trustee he had an obligation to fulfill the promises made by Rodríguez–Estrada to the plaintiff. Kagan claims that he went to López–Stubbe several times requesting back pay, a severance bonus, and letters of reference. He also asked him to remove

the termination letter from his file. López–Stubbe refused to remove the letter or write plaintiff any letters of reference, but did offer to pay plaintiff the amount due him under Puerto Rico law. 29 L.P.R.A. § 185a. Plaintiff links the refusal of López–Stubbe to provide him with letters of reference with his inability to obtain employment for a number of years and with the fact that when he did find employment, it was at a substantially lower salary.

Plaintiff also links what he perceived as a cover-up effort on the part of Otero–Bigles and López–Stubbe with the refusal to right the harm done to him by Rodríguez–Estrada. The complaint demonstrates that he felt Otero–Bigles was allied with Rodríguez–Estrada against him. And that the influence of Otero–Bigles over López–Stubbe was the genesis of López–Stubbe's refusal both to bring suit and to refuse to fulfill Rodríguez–Estrada's promises to plaintiff. Plaintiff amended his complaint to include claims against Otero–Bigles after Otero–Bigles resigned as the attorney for the estate. The only evidence of a connection between Otero–Bigles which could support these theories is that Otero–Bigles represented Rodríguez–Estrada in the bankruptcy of Northwest Promotions, Inc. by replying to a motion filed against him by the Internal Revenue Service on August 11, 1985.

### 2. The Procedural History

Plaintiff's action for wrongful termination was filed relatively early in the history of the bankruptcy. And while the demise of Rodríguez–Estrada was taking place, this action was wending a torturous path through the judicial system. When the case was originally filed on March 10, 1983, it was assigned to Bankruptcy Judge Hernández. It was then reassigned to Bankruptcy Judge Beckerleg on November 23, 1983. At this point, the bankruptcy court ordered plaintiff to amend his complaint to account for the change of trustee. He amended to include López–Stubbe as representing the estate on December 12, 1983. Judge Beckerleg denied plaintiff's request for punitive damages on August 10, 1984 in open court. Various motions by

the different parties resulted in the transfer of the case to the U.S. District Court on August 29, 1984, where it was assigned to Judge Acosta. Judge Acosta found that the bankruptcy court indeed had jurisdiction over the various claims, but retained the case in district court so as to expeditiously resolve the matter. The case was then transferred from Judge Acosta to this judge. In an order entered August 28, 1986, we vacated the previous order, dismissed the claim of slander against Rodríguez–Estrada without prejudice for lack of jurisdiction, and remanded the case to the bankruptcy court. At the bankruptcy court level, the case was reassigned to Judge de Jesús.

While Judge de Jesús is the judge from whom this appeal is taken, many other players have changed in the interim. Kagan's attorney withdrew on February 2, 1987. On February 6, 1987, López–Stubbe informed Otero–Bigles that he must withdraw as the estate's attorney. Testimony in *San Juan Hotel I* by Kagan suggested a conflict of interest in Otero–Bigles' representation of Rodríguez–Estrada. On February 9, 1987, Otero–Bigles withdrew. Then, on April 4, 1988, Kagan amended his complaint to include Otero–Bigles.

The bankruptcy court began trial on May 24, 1988, and then continued it in order for plaintiff to obtain counsel. The bankruptcy court also severed the trial of the charges against Rodríguez–Estrada from the trial of the charges against López–Stubbe and Otero–Bigles. Plaintiff did not obtain counsel and trial resumed on September 11, 1990, with plaintiff representing himself *pro se*. The bankruptcy court dismissed all claims against López–Stubbe and Otero–Bigles in open court on September 18, 1990, and allowed plaintiff damages under 29 L.P.R.A. § 185a against the estate. On March 23, 1992, the bankruptcy court issued an opinion in which it stated its findings.

The bankruptcy court found that the district court had limited the inquiry by the bankruptcy court to the determination of whether the former and successor trustees were liable for actions while acting in their

official capacities. This precluded consideration of whether Otero–Bigles, his wife, and the conjugal partnership were personally liable to plaintiff on any of the stated causes of action. Next, it found that there was no evidence of an agreement between Rodríguez–Estrada and Kagan aside from Kagan's testimony. It found that under those circumstances, there was no way López–Stubbe could be certain an agreement existed and so he was under no obligation to remove the letter. As Kagan was never his employee, he was under no obligation to write letters of reference. The bankruptcy court also found that there was no evidence of a cover-up or of a plan to harm Kagan. As to the issue of whether Otero–Bigles had a conflict of interest under the code of professional responsibility leading to a violation of the bankruptcy code under 11 U.S.C. § 327, the bankruptcy court found that it had no jurisdiction. It cited as reasons that (1) it could not decide questions relating to the rules of professional responsibility, and (2) that section 327 did not provide plaintiff with a remedy. The bankruptcy court found that plaintiff was entitled to damages under 29 L.P.R.A. § 185a for wrongful dismissal, but that this was his sole remedy.[1]

## II.

### JURISDICTION

█ The source of our jurisdiction is that granted the district courts by Congress in 28 U.S.C. § 1334.[2] The jurisdiction of the bankruptcy court derives from the jurisdiction of the district court; hence, there are two types of jurisdiction possible for bankruptcy courts under federal law: original and exclusive jurisdiction over title 11 cases under 28 U.S.C. § 1334(a), and original non-exclusive jurisdiction over civil proceedings arising under, arising in, or related to title 11 cases under 28 U.S.C. § 1334(b). In 1978, the bankruptcy system was restructured, giving more direct power to the bankruptcy courts over bankruptcy cases. The jurisdiction of the bankruptcy cases over the "arising under, arising in, or related to" cases created a constitutional conflict concerning the ability of non-Article III courts to have direct jurisdiction over claims not brought under the bankruptcy code. The Supreme Court found that "Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants and subject only to ordinary appellate review." *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); *see also Renne v. Geary*, — U.S. ——, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991); *Commodity Futures Trading Com. v. Schor*, 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986); *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985). In other words, the bankruptcy court could not render a final decision in cases too distant from the jurisdiction allowed it by the bankruptcy statutes.

To correct the constitutional infirmities that resulted from the 1978 restructuring, Congress passed 28 U.S.C. § 157(a). Section 157(a) created a distinction between what are termed core and non-core proceedings. Bankruptcy judges have the power to "hear and determine" core proceedings subject only to the review power of the district court. However, in the case of non-core proceedings, bankruptcy judges only have the ability to recommend. *In re Cor-*

---

**1.** *Rodríguez v. Eastern Air Lines, Inc.,* 816 F.2d 24 (1st Cir.1987); *Weatherly v. International Paper Co.,* 648 F.Supp. 872, 877 (D.P.R.1986); *Vargas v. Royal Bank of Canada,* 604 F.Supp. 1036 (D.P.R.1985); *Rivera v. Security National Life Ins. Co.,* 106 D.P.R. 517, 527 (1977).

**2.** Section 1334 states in its pertinent part:
(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

*poración de Servicios Médicos Hospitalarios de Fajardo,* 805 F.2d 440, 443 (1st Cir.1986). The language of section 157 specifically mentions "arising under" and "arising in" cases, leading to the conclusion that the statute did not intend to include "related" cases in the group that could be considered a core proceeding. *Collier on Bankruptcy* § 3.01[2][b][ii] at 3–39 (1992); *see In re Arnold Print Works, Inc.,* 815 F.2d 165, 167 (1st Cir.1987). Related proceedings are "those civil proceedings that, in the absence of bankruptcy, could have been brought in a district court or state court." *Collier on Bankruptcy* § 3.01(1)(c)(iv) (citing *In re Colorado Energy Supply Inc.,* 728 F.2d 1283 (10th Cir. 1984)); *see also In re Parque Forestal, Inc.,* 949 F.2d 504, 509 (1st Cir.1991). This case, where plaintiff's action rests on a state claim of wrongful termination, is a related case. *See In re Hudson Oil Co.,* 68 B.R. 735, 741 (D.Kan.1986) (case holding that retaliatory dismissal is a related matter). Therefore, according to the above discussion, the instant case, as a related case, is a non-core proceeding. Treating it as a non-core proceeding would mean that the bankruptcy court would have no power to issue a final order in this case. However, when this court remanded the case to the bankruptcy court in its August 27, 1986 order, it gave the bankruptcy court the power to issue a final judgment. The language of the opinion clearly indicates that the district court intended the bankruptcy court to make a final disposition.

■ However, there are some who hold the opinion that where the issue of the bankruptcy court's power to make a final judgment is not raised by the parties and the bankruptcy court enters a dispositive order, this constitutes a waiver of the right to raise the issue. *Collier on Bankruptcy* § 3.01(2)(c) at 3–53 (1992). Essentially, courts treat the silence of the parties as acceptance of the bankruptcy court's jurisdiction. *Collier on Bankruptcy* § 3.01(2)(d)(i) at 3–59 & § 3.01(2)(d)(ii) at 3–62 (1992). *See Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), where the Supreme Court was concerned with the jurisdiction of non-Article III courts in a situation where the parties had not agreed to submit to the jurisdiction of the non-Article III court. In this case, the bankruptcy court entered a final judgment after we ordered it to make a final disposition, and neither of the parties objected. Therefore, the issue of whether jurisdiction is absent is non-existent. The bankruptcy court acted properly and the parties can have no objection to the district court exercising its function as an appeals court under 28 U.S.C. § 158. As an appellate body, we may review conclusions of law, but findings of fact may only be set aside if clearly erroneous, where the court "is left with the definite and firm conviction that a mistake has been committed." *U.S. v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *In re G.S.F. Corp.,* 938 F.2d 1467, 1474 (1st Cir.1991); *see* Fed.R.Bankr.P. 8013.

### III.

### STANDING

The above discussion settles the jurisdiction of this court over most of plaintiff's claims. However, Kagan's claim that Otero–Bigles falsely claimed to be a disinterested party and, therefore, violated 11 U.S.C. § 327 must first pass another hurdle, namely whether the plaintiff has standing to bring claims of illegal behavior on the part of the estate's attorney. The bankruptcy court was clearly uncomfortable with its jurisdiction over the issue of Otero–Bigles' behavior. That the lack of a remedy was one of the reasons for the bankruptcy court's decision not to exercise jurisdiction over this portion of plaintiff's complaint clearly points to some concern with standing.

■ We disagree with the bankruptcy court in that it does not have jurisdiction over the question of whether Otero–Bigles violated the requirement that he be a "disinterested party." 11 U.S.C. § 327. *In re Martin,* 817 F.2d 175, 181 (1st Cir.1987) ("bankruptcy courts have been accorded wide discretion ... in regard to the terms and conditions of the engagement of pro-

fessionals"); *see also In re AOV Industries, Inc.*, 797 F.2d 1004, 1010 (D.C.Cir. 1986); *In re Pierce*, 809 F.2d 1356, 1363 (8th Cir.1987). An attorney submitting to the scrutiny of the bankruptcy court has a responsibility to disclose any potential conflicts of interest of which he knows. *In re BH & P, Inc.*, 119 B.R. 35, 43 (D.N.J.1990), *aff'd* 949 F.2d 1300 (3rd Cir.1991); *In re Roberts*, 75 B.R. 402, 410 (D.Utah 1987). The standard is whether an "actual" conflict exists. As argued by the plaintiff, a code of professional responsibility might be used to draw the outline of what constitutes a conflict. *In re Lee Way Holding Co.*, 102 B.R. 616, 620–22 (S.D.Ohio 1988). So, in this case it might be found that the type of conflict envisioned by the code does include the representation of a former trustee. The exact nature of the conflict would certainly be a question for the bankruptcy court to consider.

 However, such question need not be addressed any further. Kagan had no standing to litigate this particular aspect of his claim. What prompted the bankruptcy court's hesitancy was its uneasiness with the investigation of Otero–Bigles' representations to the bankruptcy court in the context of a wrongful termination suit by plaintiff. Standing is a threshold issue in every federal case which requires the court to inquire whether the plaintiff has such a personal stake in the outcome of the controversy that he may invoke federal jurisdiction. *American Postal Workers Union v. Frank*, 968 F.2d 1373 (1st Cir.1992); *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975). The First Circuit has established that a standing inquiry has three elements: "[a] litigant must (1) ' "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant" and (2) that the injury "fairly can be traced to the challenged action" and (3) "is likely to be re-

dressed by a favorable decision." ' " *American Postal Workers Union v. Frank*, 968 F.2d at 1374; *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). Plaintiff is a creditor under 11 U.S.C. § 101(5),[3] and this makes him a party in interest under 11 U.S.C. § 1109. *See generally In re Public Service Co.*, 88 B.R. 546, 550 (Bankr.N.H. 1988). However, a party must be both a party in interest and have standing to bring suit in the name of the estate. When plaintiff sought to represent the estate in a suit against Rodríguez–Estrada, the court stated that "Kagan had no standing to sue on behalf of the estate, and we believe his action properly could have been dismissed on that basis." *In re El San Juan Hotel Corp.*, 841 F.2d 6, 9 (1st Cir.1988). The circuit held that "[w]here the assets of the estate have been diminished by the trustee's actions, the representative of the estate is the proper party to assert claims against the trustee. Conversely, where the estate itself has suffered no loss but the actions of the trustee have directly harmed a creditor, it should be the creditor, not the estate, that sues." *In re San Juan Hotel Corp.*, 847 F.2d 931, 938 (1st Cir.1988) (citations omitted). Here, the injury could only be to the estate, since plaintiff is asserting injury to himself as an employee and not as a creditor.

Plaintiff alleges that Otero–Bigles' allegiance to Rodríguez–Estrada motivated him to oppose bringing suit against Rodríguez–Estrada and to influence López–Stubbe to deny plaintiff's requests for severance pay and letters of reference. Our problem is with both the traceability and redressability prongs of the doctrine. Tracing plaintiff's injury, i.e., his inability to get work after his termination, to Otero–Bigles' alleged misrepresentation is difficult. While it may be that the attorney

---

3. Section 101 states in its pertinent part:
 (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

 (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

representing the estate has influence on the trustee, the decision as to whether to provide plaintiff with compensation and letters of reference was solely the responsibility of the trustee, who was the successor of plaintiff's employer. Whether Otero–Bigles violated the bankruptcy code and the canons of professional ethics is unrelated to plaintiff's injury. This injury would be to the estate generally. While every injury to the debtor estate derivatively injures all creditors, including plaintiff, not every derivative injury will give the creditors generally the right to sue. The alleged injury done to the estate by Otero–Bigles' alleged falsification has no direct impact on the plaintiff.

The plaintiff's injury would also not be redressed by the statute. The sole remedy under section 327 would be to rescind the compensation Otero–Bigles received for his services. This remedy would do nothing to redress the wrongs claimed by the plaintiff. The only action which plaintiff could sustain against Otero–Bigles is a violation of Otero–Bigles' duty to plaintiff, if such duty exists. Plaintiff's action under section 327 of the bankruptcy code is dismissed for lack of standing.

### IV.

### DUTY OF SUCCESSOR TRUSTEE

██ The plaintiff argues that López–Stubbe and Otero–Bigles have a fiduciary duty to compensate him for losses sustained as a result of his wrongful termination. López–Stubbe and Otero–Bigles have a fiduciary duty to the estate, *Commodity Futures Trading Com. v. Weintraub*, 471 U.S. 343, 352, 105 S.Ct. 1986, 1993, 85 L.Ed.2d 372 (1985); *In re Consupak, Inc.*, 87 B.R. 529 (Bankr.N.D.Ill.1988), for which they are personally liable. A trustee, indeed anyone with a fiduciary duty to the estate, may be personally liable for actions taken in the context of his trusteeship. *Mosser v. Darrow*, 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951). The bankruptcy court found that Otero–Bigles could not be held personally liable based on the order entered by this court on August 26, 1986. However, the order of the dis-

trict court was specifically directed to the claims against Rodríguez–Estrada for slander over which the court has no jurisdiction. This court does have jurisdiction over a claim concerning the fiduciary duties of the officers of the estate, of whom Otero–Bigles is one. Therefore, the bankruptcy court improperly excluded him from consideration. We, therefore, move to a consideration of the fiduciary duty of both the successor trustee and the estate's attorney.

██ It was the bankruptcy of the El San Juan Hotel which generated most of the law in this circuit on the issue of the fiduciary duties of a trustee. *See In re San Juan Hotel Corp.*, 847 F.2d 931 (1st Cir.1988); *Connecticut General Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612, 621 (1st Cir.1988); *In re El San Juan Hotel*, 809 F.2d 151 (1st Cir.1987). The trustee steps into the shoes of the management of the debtor. *Commodity Futures Trading Com. v. Weintraub*, 471 U.S. 343, 352, 105 S.Ct. 1986, 1993, 85 L.Ed.2d 372 (1985). As a manager, he has a responsibility to the shareholders and creditors, i.e., all parties who have an interest in the estate. The estate's attorney also has a fiduciary duty to the shareholders and creditors. *In re Consupak, Inc.*, 87 B.R. 529 (Bankr. N.D.Ill.1988). It is clear that both López–Stubbe and Otero–Bigles owe a duty to the creditors of the estate to the extent that their interests rise and fall with the economic health of the estate. However, the nexus with which we are concerned in this case is not that between the fiduciary and the interests in the estate, but rather that between employer and employee. Plaintiff bases his claim upon his reading of various provisions of the bankruptcy code and rules regarding the role of the trustee. We see no mention in these provisions or rules of anything which indicates that a successor trustee has any particular duty toward an employee who was discharged by the former trustee.

██ The employee/employer relationship is governed by state law. The essence of the employer/employee relationship in our system is the high degree of discretion

allowed the employer. The decision to terminate an employee is a discretionary decision which is only circumscribed by the limitations of state law. In Puerto Rico, the employment-at-will doctrine which is found in most states has been modified to offer the employee some protection. 29 L.P.R.A. § 185. But that in no way creates any fiduciary duty on the part of the trustee in bankruptcy to an employee. The only duty the trustee has toward an employee is to act as a reasonable employer would act. Here, Lopez–Stubbe has acted as a reasonable employer.[4] The bankruptcy context does not place any additional burden upon the trustee. A bankruptcy trustee may be personally liable for negligent acts; however, only where "discretionary judgments are not involved." *Connecticut Gen. Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612, 621 (1st Cir.1988). Although plaintiff's role in the exposure of the criminal activities of the original trustee, Rodríguez–Estrada, as acknowledged by this court, was substantial, this creates no duty in the successor trustee.

Otero–Bigles, in his capacity as attorney for the estate, owes no duty to plaintiff, except insofar as plaintiff's wrongful termination suit gives him status as a creditor. The legal counsel of the estate is not the employer and, therefore, has no duty to the employees of a bankrupt estate. Since we have determined that plaintiff here is suing not in his capacity as a creditor, but based on his status as an employee, Otero–Bigles owes him no fiduciary duty. We do not reach the issue of the responsibility of Rodríguez–Estrada.

## V.

## PUBLIC POLICY EXCEPTION

█ The bankruptcy court found that the protection offered employees by Puerto Rico law was the sole remedy available to plaintiff and awarded him damages under the statute. Plaintiff argues that there should be a public policy exception to the employment-at-will doctrine where an employee is discharged in retaliation for his attempts to disclose the illegal actions of his employer. A "whistleblower", as plaintiff characterizes himself, has three possible sources for a cause of action against his employer: a judicially constructed state policy against such termination, state legislation protecting "whistleblowers", or federal legislation protecting "whistleblowers". Unfortunately, none of those provide plaintiff with a cause of action.

█ In some states, a "whistle-blower" is protected by a public policy exception to the employment-at-will doctrine where he refuses to participate in illegal or unethical acts. *See Liability for Discharging At-Will Employee for Refusing to Participate in, or for Disclosing, Unlawful or Unethical Acts of Employer or Coemployees*, 9 A.L.R.4th 329. Although there are states which have found there to be a public policy exception to the employment-at-will doctrine, that is not the case in Puerto Rico. The only exceptions to the application of section 185a in cases involving wrongful termination are: (1) if plaintiff is a member of a group protected by other social legislation, (2) if plaintiff has an independent cause of action for a tort committed in the course of the discharge, or (3) if the termination of the plaintiff violated his constitutional rights. *Arroyo v. Rattan Specialties, Inc.*, 117 D.P.R. 35, 64 (1986). Here, plaintiff is not a member of a group specifically protected by legislation. And while plaintiff may have an independent cause of action for the tort of slander, that was dismissed by this court for lack of jurisdiction. Finally, although *Arroyo v. Rattan Specialties, Inc.* does talk of public policy, it is the public policy that a worker should have adequate remedies to effectively vindicate his constitutional rights and not a more general public policy concerning the remedies of "whistleblowers". Plaintiff's cause of action is not based upon a violation of his constitutional rights.

---

**4.** The bankruptcy court found that López–Stubbe had no knowledge of any agreement between plaintiff and Rodríguez–Estrada and that he did not participate in any cover-up. He offered to settle with plaintiff within the limits of Puerto Rico law. These all appear to the court to be the actions of a reasonable employer.

**274**

Some states have specifically enacted legislation which protects "whistleblowers". Prior to July 3, 1986, at the time when plaintiff was discharged, Puerto Rico did not provide any statutory protection for "whistleblowers". The law at the time only allowed statutory relief for those employees discharged without just cause. 29 L.P.R.A. §§ 185a–185*l*. Section 185a has been found to be the exclusive remedy for wrongful termination under Puerto Rico law. *Rodríguez v. Eastern Air Lines, Inc.*, 816 F.2d 24 (1st Cir.1987); *Weatherly v. International Paper Co.*, 648 F.Supp. 872, 877 (D.P.R.1986); *Vargas v. Royal Bank of Canada*, 604 F.Supp. 1036 (D.P.R. 1985); *Rivera v. Security National Life Ins. Co.*, 106 D.P.R. 517, 527 (1977). It is for that reason that the law was amended to specifically allow some remedy for "whistleblowers". 29 L.P.R.A. § 185b.

In the federal context, only those statutes which explicitly provide for the protection of a "whistleblower" create a cause of action for wrongful termination. Note, *Protecting Employees at Will Against Wrongful Discharge: the Public Policy Exception*, 96 Harv.L.R. 1931, 1934 (1983). Plaintiff maintains that a public policy exception should emanate from federal common law, since the actions for which he was terminated, preventing illegal actions by a trustee, protected the integrity of the bankruptcy code. However, while plaintiff's actions may have resulted in the prosecution of the trustee for violations of the bankruptcy code, the code itself does not provide for the protection of employees who were fired as a result of efforts to prevent illegal actions. Unless the plaintiff can point to some portion of the bankruptcy code which specifically allows the employees of a bankrupt estate more rights than allowed by the at-will employment doctrine, plaintiff has no cause of action. Plaintiff has not done so. We, therefore, find that the bankruptcy court correctly found that plaintiff's only basis for recovery was section 185a.

## VI.

### CONCLUSION

Although we have expressed some fundamental disagreement with some aspects of the bankruptcy court's decision, we agree with the ultimate result that plaintiff's only basis for recovery was 29 L.P.R.A. § 185a. On that basis, we AFFIRM the disposition made by the bankruptcy court.

IT IS SO ORDERED.