USCA1 Opinion

 

 September 9, 1993 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 93-1202 MARSHALL J. KAGAN, Appellant, v. EL SAN JUAN HOTEL & CASINO, ET AL., Appellees. __________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jose Antonio Fuste, U.S. District Judge] ___________________ ___________________ Before Cyr, Boudin and Stahl, Circuit Judges. ______________ ___________________ Marshall J. Kagan on brief pro se. _________________ Daniel R. Dominguez, Marie E. Lopez-Adames and Dominguez & ____________________ _____________________ ___________ Totti on brief for appellees El San Juan Hotel Corp. & Hans Lopez _____ Stubbe. Carlos A. Quilichini and Ramon Lloveras Otero on brief for _____________________ ____________________ appellee Rodrigo Otero Bigles. __________________ _________________ Per Curiam. Appellant Marshall J. Kagan appeals the __________ district court order affirming an order of the bankruptcy court. The district court found that Kagan's sole remedy for alleged harm following upon his dismissal from his position as comptroller of the El San Juan Hotel was pursuant to the Puerto Rico wrongful termination statute, 29 L.P.R.A. 185a. The court dismissed his other claims for relief. We affirm. The factual as well as the procedural background to this case are complex. We summarize from the facts found below. See Kagan v. San Juan Hotel Corp., 149 B.R. 263 (D.P.R. ___ _____ ______________________ 1992). Kagan was comptroller of the El San Juan Hotel when it filed for bankruptcy under Chapter 11 in 1980. Kagan continued in his position under the court appointed bankruptcy trustee, Hector Rodriguez Estrada. After frequent disagreements between Kagan and Rodriguez as to how the estate should be managed, appellant was dismissed for unsatisfactory performance in December 1982. Kagan asserts that he was dismissed in retaliation for attempting to have the trusteeship of Rodriguez investigated. In March 1983, the Chapter 11 proceeding was converted to a Chapter 7 proceeding. In September 1983, Rodriguez was removed from the trusteeship by a unanimous vote of the creditors and replaced by appellee Lopez. Kagan urged Lopez -2- and Otero, the estate's attorney, to file suit against Rodriguez for abuse of his position. When they refused to file suit alleging that there was insufficient evidence against Rodriguez, Kagan accused Lopez and Otero of covering for Rodriguez. In 1985 suit was filed against Rodriguez by the United States as one of the estate's creditors. Rodriguez was found to have abused his trusteeship and a judgment of over 2 million dollars was imposed on Rodriguez on behalf of the estate. In Re San Juan Hotel Corp., 71 B.R. _________________________ 413 (D.P.R. 1987), aff'd in part and rev'd in part, 847 F.2d _______________________________ 931 (1st Cir. 1988). Subsequently Rodriguez was convicted and sentenced for fraud. Kagan commenced suit against the estate and Rodriguez in March 1983. Kagan sought both compensation for wrongful termination and the removal from his personnel file of a letter indicating that he had been terminated for poor performance. When Lopez replaced Rodriguez, Kagan amended his suit and sought compensation, removal of the negative letter and a new letter of reference from Lopez and Otero. Although Lopez agreed to compensation for wrongful termination, he refused to remove the old letter or write a new one. Kagan asserts that the failure to remove the old letter from his file and to provide a new "corrected" letter prevented him from obtaining new employment for several years -3- and then resulted in his being compelled to accept a position at lower wages than he had previously earned. Kagan's suit "wend[ed] a torturous path through the judicial system." Kagan, 149 B.R. at 268. Trial in the _____ bankruptcy court did not commence until May 1988. In September 1990 the bankruptcy court dismissed all claims against Lopez and Otero and allowed Kagan damages against the estate pursuant to 185a. The final order of the bankruptcy court did not issue until March 23, 1992. Kagan appealed the dismissal of his claims other than that under 185(a) to the district court which affirmed. On appeal to this court, Kagan seeks damages against Lopez and Otero for the failure to provide him with a new letter of reference. He also seeks additional damages from the estate for his wrongful dismissal.1 Claims Against Lopez and Otero ______________________________ ____________________ 1. In his prayer for relief, Kagan asks this court to "[r]emand to the Bankruptcy Court for appropriate action on the pending motion for Otero to disgorge his fees, and for Lopez to be removed from office and [to] forfeit[] his fees." The district court dismissed the claim against Otero on the ground that Kagan lacked standing to raise this claim in the context of a wrongful discharge suit. Kagan, 149 B.R. at _____ 270-72. We agree. Moreover, although the district court did not address the claim against Lopez, that claim would suffer the same defect. In any event, since Kagan has presented no argument to support this prayer in his brief, the issue is waived. Ryan v. Royal Ins. Co., 916 F.2d 731, 734 (1st Cir. ____ _______________ 1990) (issues adverted to on appeal in a perfunctory matter are deemed waived). -4- Kagan concedes that 29 L.P.R.A. 185a is the sole remedy for his claim of wrongful dismissal under Puerto Rico law. Weatherly v. International Paper Co., 648 F.Supp. 872, _________ _______________________ 878 (D.P.R. 1986) (citing cases). However, he notes that 185a does not prohibit recovery when an employee "can establish that the employer committed an independent tortious act in the course of terminating employment." Id. at 877-78. __ Kagan asserts that in this case Lopez and Otero committed the "independent tortious act of not correcting the record of dismissal and giving false bad references."2 He seeks recovery under 31 L.P.R.A. 5141 which provides that A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. To state a claim for damages under 5141, a plaintiff must show (1) that the defendants owed him a duty to prevent the harm suffered; (2) that the duty was negligently breached; and (3) that the breach caused the plaintiff harm. Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co., 958 F.2d ______________________________ ______________ 1169, 1171 (1st Cir. 1992) (citing cases). In this case, Kagan has shown no basis for inferring that either Lopez or Otero had a legal duty to correct his references which had been given by the previous trustee Rodriguez ten months ____________________ 2. We assume, without deciding, that the failure to provide corrected references and the supplying of false ones would be within "the course of terminating employment." -5- before Lopez and Otero arrived on the scene. Even assuming that Lopez and Otero were employers of Kagan, they were under no obligation to provide any references to him. See 48 ___ Am.Jur.2d. Labor and Labor Relations 43 (in absence of statute "employer who discharges an employee is not liable to the employee for his refusal to give the employee a 'character' or recommendation").3 Therefore, we cannot see why they would be required to provide "corrected" ones. "It is axiomatic that the failure to perform an act cannot give rise to a cause of action unless there was a legal duty to act." Torres v. United States, 621 F.2d 30, 33 (1st Cir. ______ ______________ 1980) (applying Puerto Rico law). Nor would it be reasonable to require Lopez and Otero to provide "corrected" references for an employee whom they never employed and whose performance they were therefore in no position to evaluate. Finally, while Lopez and Otero owe fiduciary duties to the bankrupt estate, see In Re Thompson, 965 F.2d 1136, 1145 (1st ___ ______________ Cir. 1992), and to its creditors, In Re Consupak, Inc., 87 ____________________ B.R. 529, 539 (Bankr.N.D.Ill. 1988); Bankruptcy Code 704(1), 11 U.S.C. 704(a) (duties of trustee), this duty ____________________ 3. Kagan's reliance on Ackerman v. Thompson, 356 Mo. 558, ________ ________ 202 S.W.2d 795 (1947), is in vain. In Ackerman, a state ________ statute compelled the employer to provide a "service letter" upon terminating an employee. Puerto Rico has no such statute. -6- does not extend to Kagan who is seeking damages not as a creditor of the estate but as a former employee of it.4 On appeal, Kagan also asserts that Lopez and Otero harmed him by providing false references. However, this claim was not raised below and therefore is not properly before us. Johnston v. Holiday Inns, Inc., 595 F.2d 890, 894 ________ _________________ (1st Cir. 1979). In any event, Kagan admits that he never actually sought any references for a prospective employer from Lopez or Otero and that the uncorrected letter was never disseminated. His claim to have been harmed by receiving false references is devoid of merit. Similarly without merit is Kagan's reliance on 107, 704 and 1106(a) of the Bankruptcy Code. Section 1106(a), through incorporation of 704, provides that "[t]he trustee shall . . . unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest." 11 U.S.C. 704(7). Section 107 provides that "the bankruptcy court shall . . . protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case ____________________ 4. The district court found that Otero, as the estate's attorney, owed no duty to the employees of the estate. Kagan, 149 B.R. at 273. However, the district court did _____ state that Lopez owed a duty to Kagan to act as a reasonable employer. Id. Since we find that Lopez owed no duty to Kagan __ to provide corrected references, Kagan's claim would be subject to dismissal under the "reasonable employer" standard as well. -7- under this title." 11 U.S.C. 107(b)(2). Alleging that the uncorrected reference was defamatory, Kagan seeks to find in these provisions a duty on the part of the trustee to provide proper references and to revise false ones. However (1) any duty under the Bankruptcy Code to prevent the dissemination of defamatory material is imposed on the court not the trustee; (2) the allegedly defamatory letter is not a "paper filed" in a bankruptcy case; and (3) as noted above, Kagan concedes that the letter was never disseminated. Claim Against the Estate ________________________ Kagan asserts that he is entitled to relief under the federal common law for his wrongful dismissal. According to Kagan, he was dismissed because he tried to stop the bankruptcy trustee from violating federal law. Moreover, he alleges that the Puerto Rico wrongful dismissal statute provides insufficient protection because of the limited amount of compensation the statute provides. Citing the federal interest in seeing that federal law is not violated, Kagan asks this court to formulate federal common law based on analogous state court decisions which have found a "public policy" exception to the employment-at-will doctrine where an employee is terminated for refusing to participate in illegal acts. -8- The instances in which a federal court has the authority to formulate a federal common law remedy are "few and restricted." Wheeldin v. Wheeler, 373 U.S. 647, 651 (1963). ________ _______ Absent some statutory authorization to formulate substantive rules of decision, and none is alleged here, the court has authority to create a federal common law remedy only when it is "necessary to protect uniquely federal interests." Texas _____ Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, _______________ _______________________ 640 (1981) (quoting Banco Nacional de Cuba v. Sabbatino, 376 ______________________ _________ U.S. 398, 426 (1964)). It is not enough that a remedy "supplements federal enforcement and fulfills the object of the statutory scheme." Id. at 642. Federal common law is __ appropriate only where "the authority and duties of the United States as sovereign are intimately involved or because the interstate or international nature of the controversy makes it inappropriate for state law to control." Id. at __ 641. Moreover, "[i]n deciding whether rules of federal common law should be fashioned, normally the guiding principle is that a significant conflict between some federal policy or interest and the use of state law . . . must first be specifically shown." Wallis v. Pan American Petroleum ______ _______________________ Corp., 384 U.S 63, 68 (1966). ____ We find no such "uniquely federal interests" in this case which would warrant the formulation of federal common law. Furthermore, no conflict exists here between the -9- federal policy to be promoted and the application of state law. The Commonwealth of Puerto Rico, like most states, already provides protection for those dismissed for acting in accordance with law. Finally, the rationale on which Kagan relies--i.e., that the court ought to formulate a federal common law remedy to protect those dismissed for upholding federal law--would apply to all federal regulatory schemes. Yet, Congress has chosen to enact specific protections for "whistle-blowers" where it has thought appropriate. See ___ Note, Protecting Employees at Will Against Wrongful _____________________________________________________ Discharge: the Public Policy Exception, 96 Harv.L.Rev. 1931, _______________________________________ 1934 (1983) (listing federal statutes). In adopting Kagan's rationale, we would not only be extending this protection into areas where Congress has not thought appropriate but we would be ignoring the Supreme Court's advisory that the appropriate occasions for the formulation of federal common law are "few and restricted." Wheeldin, 373 U.S. at 651. We ________ decline to do so. Kagan calls our attention to Barany v. Buller, 670 F.2d ______ ______ 726 (7th Cir. 1982). In Barany, the court formulated a ______ federal common law remedy for reinstatement of federal credit union employees allegedly dismissed in violation of federal laws. This case is distinguishable from Barany in two ways. ______ First, the decision in Barany was based in part on the ______ congressional desire to "insure uniform development in credit -10- unions." Id. at 733. In contrast, no similar desire for __ national uniformity is found in congressional control over bankruptcy law. Butner v. United States, 440 U.S. 48, 54 n.9 ______ _____________ (1979) (bankruptcy law frequently recognizes state substantive law). Second, the rationale of Barany--that the ______ federalization of the governance of an institution makes it of "uniquely federal interest"--was limited to federal credit unions and similar federal institutions. Barany, 670 F.2d at ______ 734. We see no principled way to limit the rationale for the remedy sought in the present case.5 The opinion of the district court is affirmed. ________ ____________________ 5. We also note that the Fourth Circuit has disagreed with the Barany holding. Ridenour v. Andrews Federal Credit ______ ________ _______________________ Union, 897 F.2d 715, 721-22 (4th Cir. 1990) (declining to _____ fashion federal remedy as a matter of federal common law to create cause of action for federal credit union employees challenging adverse employment actions). -11-