In re EL SAN JUAN HOTEL
CORP., Debtor.

Marshall J. Kagan, Appellant,

v.

Hans López Stubbe, Appellee.

Rodrigo Otero Bigles, Appellant
and Cross–Appellee,

v.

Marshall J. Kagan, Appellee
and Cross–Appellant,

v.

Hans Lopez Stubbe, Cross–Appellee.

BAP Nos. PR98–048, PR97–
083, PR98–057.

United States Bankruptcy Appellate Panel
of the First Circuit.

May 21, 1999.

638

Marshall J. Kagan, Los Angeles, CA, pro se.

Carlos A. Quilichini, San Juan, PR, for Rodrigo O. Bigles.

Luis M. Angelet Frau, Sergio A. Ramirez De Arellano, San Juan, PR, for appellees.

Before QUEENAN, HILLMAN and FEENEY, U.S. Bankruptcy Judges.

PER CURIAM.

These consolidated appeals raise a central question: When creditors vote to replace a chapter 7 trustee because of dissat-

isfaction with the trustee's management, does new counsel for the estate have a conflict of interest by reason of his existing (and undisclosed) representation of the original trustee in his capacity as trustee in another bankruptcy case? Resolution of this issue implicates the compensation to be awarded to both counsel and the successor trustee. The questions of conflict and compensation are highlighted here by the refusal of the successor trustee, on the advice of counsel, to prosecute mismanagement claims against the original trustee notwithstanding the later successful prosecution of such claims by the United States for the benefit of the estate. The bankruptcy court denied some, but not all, compensation of counsel, Rodrigo Otero Bigles ("Otero"), and made no deduction from compensation due the successor trustee, Hans López Stubbe ("López"). It declined to remove López as trustee. Otero and a creditor, Marshall J. Kagan ("Kagan"), appeal. Concluding that no compensation should be paid Otero and that López should be removed as trustee after a reduction in his compensation, we reverse.

## I. FACTS

The material facts are undisputed, but certainly not their legal consequences. We draw them from the transcript, the bankruptcy court's findings, the parties' stipulation, various documents in the record, and the many published decisions which have been spawned by the activities of the original trustee, Hector Rodríguez Estrada ("Rodríguez").[1] The tortuous his-

1. *See Stubbe v. Rodríguez Estrada (In re San Juan Hotel Corp.)*, 71 B.R. 413 (D.Puerto Rico 1987) (imposing $3,434,081.82 judgment against Rodríguez in suit brought by United States for benefit of estate), *aff'd in part*, 847 F.2d 931 (1st Cir.1988) (reducing judgment to $2,137,639.60, primarily by eliminating damage suffered by third parties); *In re El San Juan Hotel*, 809 F.2d 151 (1st Cir.1987) (Rodríguez lacks standing to object to order authorizing United States to sue him for benefit of estate); *Connecticut Gen. Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612 (1st Cir.1988) (imposing $418,217 judgment against Rodríguez for misapplication of fire insurance pro-

ceeds); *In re El San Juan Hotel Corp.*, 841 F.2d 6 (1st Cir.1988) (denying Kagan right to bring suit for benefit of estate against Rodríguez because of lack of court authority and pendency of prior suit brought by United States against Rodríguez for benefit of estate); *United States v. Rodríguez–Estrada*, 877 F.2d 153 (1st Cir.1989) (affirming conviction of Rodríguez on numerous counts of embezzlement, false statements and withholding of financial records); *Kagan v. El San Juan Hotel Corp. (In re El San Juan Hotel Corp.)*, 149 B.R. 263 (D.P.R.1992) (denying Kagan standing in his employment termination suit to

tory of this case began on May 20, 1980 with the filing of a voluntary chapter 11 petition by the Debtor, El San Juan Hotel Corp. The Debtor operated one of the premier hotels in San Juan, El San Juan, which had been in financial difficulty for years and had run up some $40 million of debt prior to the filing. Kagan had been the Debtor's comptroller for less than a year before the bankruptcy filing.

On July 10, 1980, the bankruptcy court appointed Rodríguez as the chapter 11 trustee. · For reasons that are unclear, the court permitted Rodríguez to serve without bond. Kagan continued as the Debtor's comptroller. The operation of the hotel by Rodríguez was a disaster. Kagan, a C.P.A. with hotel experience, bombarded Rodríguez with memoranda advising him of numerous actions which Kagan believed should be taken to reduce expenses and increase income. Rodríguez largely ignored the advice. For example, instead of reducing payroll Rodríguez increased it. He failed to pay payroll taxes to the federal and local government, thereby incurring interest and penalties in addition to the tax debt. He operated the hotel largely for his own personal benefit, drawing a weekly paycheck, enjoying an expense account, remodeling and making personal use of the presidential suite, and getting a 50% discount on the hotel's charge for his daughter's wedding reception. The Debtor continued to lose millions of dollars under his management. Rodríguez concealed this from the court and from creditors. It should have been obvious to Rodríguez early on that a successful chapter 11 reorganization was impossible in the context of such operations. Yet he continued to bleed the Debtor, run up debt and file false reports.

In December of 1982, after over two years of this, Kagan testified at a public hearing conducted by the Puerto Rico House of Representatives' Committee on Tourism. He said the hotel would soon have to close because of poor management by Rodríguez. Rodríguez also testified, accusing Kagan of engaging in a conspiracy to close the hotel. The hearing was televised and reported in the newspapers. On December 29, 1982, Rodríguez fired Kagan on the stated ground of poor job performance. The hotel closed in March of 1983. On March 23, 1983, the court converted the case to chapter 7, permitting Rodríguez to serve as chapter 7 trustee, this time with a bond. At about the same time, Connecticut General Life Insurance Company foreclosed under its first mortgage on the hotel's property.

The United States, to whom Rodríguez had incurred over $500,000 in postpetition tax obligations, filed a motion objecting to Rodríguez continuing to serve as chapter 7 trustee. Kagan organized other opposition to Rodríguez. In September of 1983 creditors unanimously voted to replace Rodríguez with López. Kagan immediately informed López of his allegations of wrongdoing by Rodríguez and demanded action. As conceded by López at the hearing on the present motion, the major reason López was brought into the case was to investigate the management of Rodríguez.

López decided to hire Otero as his counsel. López testified at the hearing before the bankruptcy court that he asked Otero "whether he had any conflict in representing any of the creditors" and received a negative answer. López did not ask Otero whether he had any relationship with Rodríguez. On September 26, 1983, López filed with the court an application to employ Otero and Otero's law firm, Otero Suro & Otero Suro, as his counsel. Filed with the application was Otero's affidavit in which he states that he and his firm "have had no business or professional connection with this case or related matter, although they may have appeared on behalf of some general creditors of the within estate and although the members of the

assert conflict of interest claim against Otero or to claim benefit of fiduciary obligations

owed by López as trustee), *aff'd,* 7 F.3d 218 (1st Cir.1993) (unpublished).

Law Firm may be a relative [sic] of some attorney of adverse parties or some creditors...." Otero also says in the affidavit "I know of no reason why ... Otero Bigles [and the law firm] cannot faithfully discharge their duties as attorneys for the applicant therein."

Otero's affidavit failed to disclose significant facts. Otero was already employed as counsel to Rodríguez in another bankruptcy case. On May 27, 1983, Rodríguez as trustee had hired Otero to be his counsel in the bankruptcy case of Northwestern Promotions, Inc., No. 81–00203(SEK).[2] Otero also failed to disclose that he was a "good friend" (according to López) of Charles A. Cuprill ("Cuprill"), who served as counsel to Rodríguez during the Rodríguez trusteeship in the present case. Based on the information (or lack of it) contained in the employment application and affidavit, the court appointed Otero as counsel to the successor trustee, López.

Kagan met with López and Otero several times in late 1983 and presented them with complaints about Rodríguez. On December 29, 1983, Kagan wrote López specifying charges against Rodríguez and requesting López to take action against Rodríguez to recover losses caused by his mismanagement. Otero, on behalf of López, responded by letter dated January 3, 1984, saying there was insufficient evidence to support such action. Similar, increasingly strident, exchanges took place thereafter between the parties. At the hearing on the present motion, Kagan testified that he at some point discovered Otero was employed by Rodríguez in the Northwestern Promotions case, that he wrote López informing him of this, and that López replied this was a "personal matter and had nothing to do with [Otero's] work on the case." López did not deny this.

Frustrated, Kagan filed a motion with the bankruptcy court requesting authority to file a complaint against both Rodríguez and Cuprill on behalf of the bankruptcy estate. The Chief Judge, Antonio I. Hernandez, referred the motion to Hon. W.H. Beckerleg. Judge Beckerleg requested Kagan and López to file reports on the matter with the court, which they subsequently did on May 16, 1985. The United States was an interested party by reason of the estate's large postpetition tax liability. Because of the delay in allowance of Kagan's motion, the United States asked for permission to sue Rodríguez on behalf of the estate. On April 17, 1985, before López and Kagan filed reports with the court, Judge Hernandez authorized the United States to sue Rodríguez for the estate, on the condition the suit would be at no cost to the estate. On May 17, 1985, the United States brought suit against Rodríguez, but not Cuprill.[3]

The May 16, 1985 report filed with Judge Beckerleg by Otero, on behalf of López, is revealing. Otero began with these comments on the report which Kagan had filed with the court: "In substance Kagan's report is a repetition of unsubstantiated allegations against the former trustee, Héctor M. Rodríguez–Estrada ("Rodríguez") and his counsel, Charles A. Cuprill–Hernández ("Cuprill"). Not content with his unsupported allegations against Rodríguez and Cuprill, Kagan also directs his accusations and innuendoes against the undersigned counsel." Referring to the suit about to be filed by the United States, Otero's report continued: "[López] had no objection to the filing of the suit as long as its prosecution

---

**2.** Otero remained counsel to Rodríguez and a successor trustee in the Northwestern Promotions case until the case was closed on February 28, 1985.

**3.** Thereafter, apparently not aware of the Hernandez order, Judge Beckerleg authorized Kagan to sue Rodríguez as well. A stay of the latter order was issued on June 27, 1985, but Kagan inexplicably filed his own complaint with the bankruptcy court on October 7, 1985. The complaint was subsequently dismissed because of the prior suit by the United States. *See In re El San Juan Hotel Corp.*, 841 F.2d 6 (1st Cir.1988).

did not represent any cost to the estate. This was the position of López since he has doubts as to the outcome of said suit and as to any recovery, even if the action would be successful." Otero went on to argue against the merits of Kagan's charges against Rodríguez and Cuprill, and also against the merits of charges Kagan made against López and Otero. Otero asserted that any cause of action against Rodríguez for mismanagement would be time-barred. He denied Kagan's allegations that Cuprill was at fault in any mismanagement by Rodríguez or was guilty of overbilling the estate by charging senior lawyer's rate for the services of a junior lawyer. He went to some length to denigrate any cause of action of the estate against Cuprill. Admitting his friendship with Cuprill, Otero stated: "If Kagan submits any evidence which would reflect the existence of any cause of action on behalf of the estate and against Cuprill, he can rest assured that the appropriate action would be filed. This, Kagan has not done." Otero also referred to Kagan's contention that he, Otero, had a conflict of interest in representing Rodríguez in both this case and the Northwestern Promotions case. Without denying the existence of a conflict, Otero stated: "Kagan can rest assured that if he produces the evidence which would warrante [sic] the filing of a cause of action against Rodríguez or Cuprill on behalf of López as trustee for SJH, the undersigned would proceed with the filing thereof, regardless of his relationship with Cuprill or Rodríguez." Referring to Judge Hernandez's recent order authorizing the United States to sue Rodríguez and to the condition of that order that the suit be at no cost to the estate, Otero concluded by asserting that a second suit would be "a multiplicity of litigation."

Rodríguez and Cuprill were not the only parties employed during the Rodríguez administration against whom Kagan requested López and Otero to take action. As mentioned in the report which Otero filed with Judge Beckerleg, Kagan complained about a $75,000 fee paid for tax services to an attorney, Edward Ramírez Vale, and about the settlement of the estate's claim against Vale. Kagan believed the services were unnecessary, that the payment went beyond court authorization and that the settlement was a poor one. He asserts in the present appeal that delay in bringing suit caused the statute of limitations to run on most of the claim. Kagan also alleges that one Miguel DeAngel, a C.P.A., was an accomplice of Rodríguez in the handling of a "secret" bank account and that DeAngel was paid for services of little or no value. According to Kagan, López, at Kagan's urging, sued DeAngel, never called Kagan as a witness, and suffered a dismissal of the suit. Kagan contends that Otero's conflict of interest concerning Rodríguez prejudiced prosecution of the estate's claims against these parties in that Kagan wanted Otero to sue Rodríguez as well.

The United States proceeded with its suit against Rodríguez for the benefit of the estate. A bench trial before Hon. José Antonio Fusté began in district court on January 26, 1987 and ended on February 4, 1987. Kagan was the main witness. While on the stand, he mentioned that Otero represented Rodríguez in another case while employed as counsel to López in this case. According to Kagan's testimony at the hearing below, Judge Fusté exploded, saying "they must think they're in a tropical Bankruptcy Court" and ordering both López and Otero to meet with him. The bankruptcy judge declined to make a finding on whether this incident occurred. But it is undisputed that on February 6, 1987 López wrote to Otero. He states in the letter that Kagan testified in district court that Otero "might have a possible conflict of interest" because of the dual representation, that López was "aware that representations of attorneys in Bankruptcy Court may result in an apparent conflict of interest," and that he was writing so that "together we may determine whether you should withdra[w] the legal representation of the undersigned in said

case." On February 9, 1987, Otero filed a motion to withdraw as counsel to López, stating that "pursuant to the attached copy of a letter dated February 6, 1987 ... the undersigned attorneys might have a possible conflict of interest in the representation of the Trustee or the estate herein," and that he and López believe "it would be better" if he withdrew. The bankruptcy court quickly granted the motion.

The United States was successful in its case against Rodríguez. Judge Fusté found that Rodríguez had engaged in the activities previously described, and that Rodríguez knew as early as May 1, 1981 that reorganization was not possible, yet continued to operate the Debtor for his own benefit to the prejudice of creditors. Judge Fusté assessed damages in the sum of $3,434,081.82 (exclusive of possible future estate liability for illegal firing of strikers by Rodríguez). He entered judgment in that amount against Rodríguez in favor of the estate. See Stubbe v. Rodríguez Estrada (In re San Juan Hotel Corp.), 71 B.R. 413 (D.P.R.1987). The Court of Appeals reduced the judgment to $2,137,639.60, mostly by eliminating elements of damage suffered by certain creditors rather than by the estate. See López–Stubbe v. Rodríguez–Estrada (In re San Juan Hotel Corp.), 847 F.2d 931 (1st Cir. 1988).

Only about $15,000 was recovered on the judgment. The litigation cost the United States in excess of $280,000. Perhaps because of these economic realities, the parties' stipulation includes the following: "That the estate has not suffered economically because of Otero and López interventions, much to the contrary, it has preserved and increased its capital." López testified at the hearing below that he "had a suspicion that we weren't going to get any money out of Rodriguez."

In 1988, the United States indicted Rodríguez on numerous counts. A jury convicted him of twenty counts of embezzlement from the bankruptcy estate of El San Juan Hotel Corp., three counts of false statements to the I.R.S. and one count of unlawfully withholding information from the successor bankruptcy trustee. See United States v. Rodríguez–Estrada, 877 F.2d 153 (1st Cir.1989). Rodríguez was sentenced to a lengthy prison term and was ordered to make restitution to the bankruptcy estate in the sum of $37,500. Counsel informed the panel at the oral argument that Rodríguez has since completed serving a ten year jail sentence.

## II. PROCEEDINGS BELOW

Acting for the most part pro se, Kagan has persevered through a number of judicial rebuffs in his attempt to litigate the question of Otero's conflict. His current effort began with a motion filed in the bankruptcy court on October 28, 1992.[4] In that motion he requested the court to grant the following relief: (1) vacate the order authorizing the employment of Otero as attorney for López as trustee, (2) order disgorgement of all fees received by Otero, (3) remove López as trustee and deny him commissions, (4) report to the local bar authority a violation by Otero of professional rules of ethics, and (5) file a report with the United States Attorney of Kagan's allegations of perjury committed by Otero in the affidavit filed with his employment application. The bankruptcy court denied all the requested relief, primarily on the ground that prior decisions[5] in an adversary proceeding (A.P. No. 83–0183) which Kagan had brought in 1983 against Rodríguez for unlawful employment termination, whose complaint was amended in 1988 to include López and Otero as defendants, precluded Kagan from relitigating

4. The record, inexplicably, does not contain this motion. We garner its substance from the uncontested descriptions given it by the bankruptcy court and the parties.

5. See Kagan v. El San Juan Hotel Corp. (In re El San Juan Hotel Corp.), 149 B.R. 263 (D.P.R.1992), aff'd, 7 F.3d 218 (1st Cir.1993) (unpublished).

the conflict question.[6] In 1996, the district court reversed and remanded. It ruled that the prior decisions in the adversary proceeding were not a bar to the present motion because in denying Kagan the relief he requested against López (an order directing López to remove from the file the negative Rodríguez discharge letter of December 29, 1982 and to replace it with a new letter) the prior decisions had done so on the ground Kagan sought individual relief and hence lacked standing to benefit from a violation of López's fiduciary duties owed to the bankruptcy estate.[7]

Upon remand, Kagan moved for summary judgment on the motion of October 28, 1992. Otero also presented his fifth and final application for compensation. In an opinion dated July 9, 1997 dealing with both matters, the bankruptcy court ruled that Otero's simultaneous employment by Rodríguez in both this case and the Northwestern Promotions case was a "potential" conflict of interest which should have been disclosed at the outset. The court believed

the potential conflict ripened into an "actual" conflict when López was called upon to file a report advising Judge Beckerleg on whether to allow Kagan to sue Rodríguez for the benefit of the estate. It reasoned that "[a]t this point Trustee's counsel was called upon to render an opinion which caused him to engage in an actual competition between two adverse interest [sic] he was representing simultaneously," so that "at this point his independent professional view was likely to be affected by the conflicting interests...." As a sanction, the court ordered the following: (1) disgorgement of all fees received by Otero and his firm for services after May 16, 1985, the date of the report and the date when in the court's view the representation became an actual adverse interest, and (2) a 40% reduction of fees for prior legal services. The court did not completely disallow fees for services rendered prior to May 16, 1985 because it was "unable to find, [sic] evidence demonstrating ... representation

6. Kagan's adversary proceeding for wrongful employment discharge has a tortured history of its own, beginning in 1983 and ending in 1993 with final adjudication on appeal. It initially bounced between two bankruptcy judges. It was transferred to the district court in 1984. One district judge handled some motions and transferred the proceeding to another district judge. The second judge entered various orders, including dismissal of a slander claim, and in 1986 referred the proceeding back to the bankruptcy court. The bankruptcy judge who had previously handled the matter had left the bench and another bankruptcy judge took it on. After Kagan amended the complaint in 1988 to include López and Otero as defendants, trial began in 1988 but was continued to give Kagan time to retain counsel. The court severed the charges against Rodríguez from those against López and Otero. The bankruptcy court, in open court, dismissed all of Kagan's claims against López and Otero, which were primarily a request for removal of Rodríguez's December 29, 1982 dismissal letter and replacement with a new letter.

Kagan thereafter decided to appear *pro se*. Trial resumed in 1990, at which point the court allowed Kagan a claim against the estate in the limited amount permitted by 29 L.P.R.A. § 185a (1976). The court issued an opinion on March 23, 1992. In the opinion

the court reasoned that dismissal of the claims against López and Otero was warranted because of the obscure wording of a 1986 remand order from the district court. The court ruled that it had no jurisdiction over the question of Otero's conflict because the "Code does not grant the Bankruptcy Court jurisdiction to entertain questions concerning an attorney's violation of the rules of professional conduct ..." and that, even if it did, the remedy would be disgorgement of fees to the bankruptcy estate. Although disagreeing with the bankruptcy court's statement concerning its jurisdiction, the district court affirmed on the ground Kagan lacked standing to complain about the violations by estate fiduciaries of their obligations owed the estate. It also affirmed the bankruptcy court's order limiting Kagan's claim against the estate. *See Kagan v. El San Juan Hotel Corp. (In re El San Juan Hotel Corp.)*, 149 B.R. 263 (D.P.R.1992), *aff'd without opinion*, 7 F.3d 218 (1st Cir.1993).

7. Kagan requested in the adversary proceeding compensatory and punitive damages exceeding $1 million. This relief was denied on the ground that Puerto Rico statutory law, 29 L.P.R.A. § 185a (1976), is the sole monetary remedy for his claim of wrongful dismissal, and that this limited his damages to $7,051.28.

**644**

caused damage to the estate up to this point."

The court denied Kagan's requests that it (i) make a second referral to the United States Attorney of alleged perjury by Otero,[8] and (ii) refer Otero's breach of ethical rules to the Supreme Court of Puerto Rico as the authority regulating attorneys. The court reasoned that Kagan was able to follow up on the prior referral to the United States Attorney and was able himself to present his complaints about Otero to the Supreme Court. In addition, the court ruled that referral of Otero and his firm to the United States District Court for the District of Puerto Rico for disciplinary action was not warranted because Otero and his firm have been sufficiently penalized for the transgression.

The bankruptcy court denied Kagan's request to remove López as trustee. It observed there was no showing that López had committed fraud or injured the estate by employing Otero or by relying on his advice, and that López did not oppose the action brought by the United States against Rodríguez for the benefit of the estate. The court stated: "As soon the Trustee learned of Judge Fusté's remarks as to this controversy, he asked for Mr. Otero Bigles' resignation." The court also noted that López had already rendered his final accounting and had resigned from the panel of trustees.

The court then turned to Kagan's request that López be denied his commission. It believed that denial of compensation to López would only be justified if

López failed to make a reasonably careful investigation into whether Otero had a conflict. Constrained by the summary judgment context, the court deferred a decision on López's right to compensation pending receipt of evidence of what inquiry, if any, López had made of Otero's conflicts at two stages of the case: (1) the time he hired Otero, and (2) when Otero filed his report with Judge Beckerleg.

The court conducted an evidentiary hearing on December 19, 1997 concerning López's right to compensation,[9] and issued its decision on June 5, 1998. Referring to page 18 of the hearing transcript, the court states in its decision that "[c]redible, uncontested testimony and evidence shows the Trustee did inquire whether Otero and his firm had a conflict of interest before López hired them." Page 18 of the transcript, however, merely contains López's testimony concerning what he understands bankruptcy law requires counsel to do prior to being employed. Page 20 of the transcript contains the testimony which the bankruptcy court apparently had in mind. Counsel for López asked López: "What inquiry did you make before the hiring of Otero Suro & Otero Suro in this case?" López responded: "Well, the inquiry we generally do. We asked the counsel whether he had any conflict in representing any of the creditors." The responsive given by Otero to this inquiry, although it was not inquired of at the hearing, was presumably in the negative. At no time did López testify he asked Otero whether Otero had any relationship

8. The transcript of the hearing before the bankruptcy court held on December 19, 1997 reflects that Chief Bankruptcy Judge Lamoutte wrote a letter to the United States Attorney referring for investigation, pursuant to 18 U.S.C. § 3057, Kagan's complaint against Otero. Although the letter is not part of the record on this appeal, the bankruptcy court found at the hearing that Judge Lamoutte had made a referral to the United States Attorney of Kagan's "proffer" of perjury allegedly committed by Otero in filing an affidavit that did not disclose the alleged conflict of interest.

9. The hearing proved to be fairly chaotic, due in part to Kagan acting *pro se*. Kagan repeatedly attempted to present evidence concerning various alleged deficiencies in López's trusteeship. Ruling the hearing was confined to Kagan's conflict inquiry at two stages of the case, the court excluded such evidence. It did, however, permit Kagan voluminous proffers concerning the López trusteeship.

with Rodríguez.[10] The bankruptcy court goes on to note that Otero filed an affidavit attached to the employment application attesting to a lack of conflict, that the application was reviewed by a judge without opposition, and that Kagan was closely monitoring the case, so that Kagan was presumably aware of the application and yet neither he nor any creditor objected to the employment.

Kagan argued before the bankruptcy court that López should have fired Otero when Kagan informed him of Otero's dual representation. The bankruptcy court believed, however, that the second critical time for López to have had made inquiry was when Otero filed his report with Judge Beckerleg. The court states that López relied upon Otero's denial of any conflict contained in the report.[11] The court also notes that López justified his reliance on the report by his having hired "reputable" counsel, that López did not impede Otero from addressing the conflict in the report, that the report had been seen by two bankruptcy judges without either making a ruling, that López "did not impede Kagan from again raising the matter before Judge Fusté ..." and that López and Otero "decided it was best to withdraw as counsel avoiding further litigation with Kagan." The court concluded from all this that "López conducted an appropriate inquiry into his Counsel's conflict once the "Report" was filed."

The court therefore denied Kagan's request that no compensation be paid to López. It also ruled that López's "diligent" inquiry made it unnecessary to consider whether certain instances of López's malfeasance alleged by Kagan (presumably including his handling of the Cuprill, Vale and DeAngel claims) "were caused

because López violated of [sic] 11 U.S.C. § 326(d) when he employed Otero and his firm."

This bankruptcy case has apparently remained open all these years because of the Kagan adversary proceeding concerning his employment termination, which was not finally adjudicated until 1992, and because of Kagan's pending motion filed on October 28, 1992. López has filed his final report containing proposed distributions, including payment of attorney's fees and trustee's commissions.

Kagan appeals from the orders entered by the bankruptcy court on July 9, 1997 and June 5, 1998. Otero appeals from the order of July 9, 1997.

## III. JURISDICTION

This panel has jurisdiction of these appeals pursuant to 28 U.S.C. § 158, Fed. R.Bankr.P. 8001.

## IV. STANDARD OF REVIEW

■ Appellate review of an order of the bankruptcy court is governed by Fed. R.Bankr.P. 8013, which provides that findings of fact shall not be set aside unless clearly erroneous. Conclusions of law are reviewed *de novo*, which simply means that the appellate court is not bound by the bankruptcy court's view of the law. *See Smith v. Marshall (In re Hot Tin Roof, Inc.)*, 205 B.R. 1000 (1st Cir. BAP 1997).

■ An appellate court reviews the award of attorneys' fees for an abuse of discretion, which occurs if the judge fails to apply the proper legal standard, fails to follow proper procedures in making the determination or bases an award upon findings of fact that are clearly erroneous.

10. Apparently, however, López would not have been deterred from hiring Otero even if he knew at the outset of Otero representing Rodríguez in the other case. He was later asked by his counsel: "Why do you believe Otero Suro's representation of Mr. Rodríguez on another estate did not have a conflict of interest with this case?" His response: "The

case that was brought up in this case was Northwestern Promotions and the Estate of San Juan had nothing to do with Northwestern Promotions."

11. As previously indicated, the report contains no such denial.

See Electro–Wire Prods. v. Sirote & Permutt, P.C. (In re Prince), 40 F.3d 356, 359 (11th Cir.1994). An abuse of discretion occurs when "the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Gray v. English, 30 F.3d 1319, 1324 (10th Cir.1994). An abuse of discretion may occur if a court fails to apply the correct legal standard or bases its ruling on a view of the law that is erroneous. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

▮ The determination of whether an actual conflict of interest exists is a legal conclusion which is subject to de novo review. See In re Roberts, 75 B.R. 402, 412 (D.Utah 1987). Although fee awards are upheld in the absence of an abuse of discretion or erroneous application of the law, once an appellate court has determined that clear factual error or legal error has been made, or an abuse of discretion has occurred, it is competent to review the proper amount of attorney compensation and is not bound to remand to the bankruptcy court for further consideration. See Southwestern Media, Inc. v. Rau, 708 F.2d 419, 422 (9th Cir.1983).

## V. OTERO'S CONFLICT AND ITS EFFECT UPON HIS COMPENSATION

▮ An attorney for a bankruptcy trustee has a fiduciary obligation to the trustee and the estate, must be totally loyal to the trustee and the estate, and must refrain from any adverse interest. The attorney must look to all sources of recovery available to the estate and avoid any interest adverse to the estate which would render that search impossible. See In re Michigan Gen. Corp., 78 B.R. 479, 485 (Bankr.N.D.Tex.1987).

Section 327(a) of the Bankruptcy Code contains the central statutory provision governing conflicts of interest of counsel. It provides in pertinent part:

Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a) (1994).

Section 101(14) provides in part, "disinterested person" means a person that

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or any investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason.

11 U.S.C. § 101(14) (1994).

▮ Courts interpreting § 101(14) have required that professionals be free of any "scintilla of personal interest" which might impact upon the professional's decisions in estate matters. In re Asher, 168 B.R. 614, 617 (Bankr.N.D.Ohio 1994). Professionals are expected to tender "undivided loyalty" and provide "untainted advice." Rome v. Braunstein, 19 F.3d 54, 58 (1st Cir.1994).

▮ The phrase "interest materially adverse to the interest of the estate" is not defined in the Code. Courts interpret it as "the possessing or asserting of any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant or possessing a predisposition under circumstances that render such a bias against the estate real." In re Prince, 40 F.3d at 361. See also In re Roberts, 46 B.R. 815, 827 (Bankr.D.Utah 1985), aff'd in part and rev'd in part, 75 B.R. 402 (D.Utah 1987). In determining whether the requirements of disinterestedness and absence of a materially adverse interest have been met, the court of appeals of this

circuit examines whether the targeted interest creates a "meaningful incentive to act contrary to the best interests of the estate and its sundry creditors—an incentive sufficient to place those parties at more than acceptable risk—or the reasonable perception of one." *In re Martin,* 817 F.2d 175, 180 (1st Cir.1987). "The test is neither subjective, nor significantly influenced by the court-appointed professional's 'protestations of good faith,' ... but contemplates an objective screening for even the 'appearance of impropriety'." *Rome,* 19 F.3d at 58.

 In addition to these substantive prerequisites for retention, an attorney employed as a bankruptcy professional must comply with the disclosure requirements of the Federal Rules of Bankruptcy Procedure. Rule 2014(a) requires that an application requesting authority to employ a professional person state "all of the person's connections with the debtor, creditors, any other party in interest, [and] their respective attorneys and accountants...." Fed.R.Bankr.P. 2014(a). The application must be accompanied by the professional person's "verified statement ... setting forth the person's connections" to all parties in interest. *Id.* The professional must disclose, and update, any circumstances suggesting either an actual or potential conflict. *Rome,* 19 F.3d at 59. The professional cannot pick and choose which connections to disclose. *See In re Hot Tin Roof, Inc.,* 205 B.R. at 1003. It is the responsibility of the professional to disclose all relevant connections. *See In re The Leslie Fay Cos., Inc.,* 175 B.R. 525, 533 (Bankr.S.D.N.Y.1994). Although an attorney need not disclose every past or remote connection with every party in interest, he must disclose those presently or recently existing, whether they are of business or personal in nature, which could reasonably have an effect on the attorney's judgment in the case. *See In re Rusty Jones, Inc.,* 134 B.R. 321, 346 (Bankr. N.D.Ill.1991).

 Attorneys who fail to meet these standards or make inadequate disclosures may be penalized in a variety of ways, including disqualification or removal from the case, total or partial denial of compensation, or disgorgement of fees and expenses. *In re Prince,* 40 F.3d at 356; *Rome,* 19 F.3d at 58. If counsel has or develops a disqualifying conflict of interest at any time in the case, the court may deny counsel some or all compensation. The Code makes this clear by providing:

> Except as provided in section 327(c) [concerning representation of a creditor], 327(e) [concerning special counsel], or 1107(b) [concerning prior representation of the debtor] of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

11 U.S.C. § 328(c) (1994).

 Similarly, inadequate disclosure may also carry severe penalties. "Anything less than the full measure of disclosure leaves counsel at risk that all compensation may be denied." *In re Saturley,* 131 B.R. 509, 516–17 (Bankr.D.Me.1991).

In *Woods v. City National Bank & Trust Co.,* 312 U.S. 262, 268, 61 S.Ct. 493, 85 L.Ed. 820 (1941), the Supreme Court adopted a strict rule under the prior Bankruptcy Act requiring denial of all compensation to an attorney with a conflict of interest. One circuit court of appeals has applied the strict rule of *Woods* in interpreting section 328(c). In *In re Georgetown of Kettering, Ltd.,* 750 F.2d 536 (6th Cir.1984), the Sixth Circuit reversed a fee award to debtor's counsel because throughout the case counsel represented an insider creditor with an unsecured

claim. *See also Michel v. Federated Dep't Stores (In re Federated Dep't Stores)*, 44 F.3d 1310 (6th Cir.1995); *accord In re Chou–Chen Chemicals, Inc.*, 31 B.R. 842, 851 (Bankr.W.D.Ky.1983).

■■■ However, the First Circuit Court of Appeals has declined to adopt a *per se* or brightline rule invariably requiring denial of all compensation because of a conflict of interest, recognizing that bankruptcy judges, being on the front line, should have wide discretion in regard to professional employment issues. *Rome*, 19 F.3d at 62–63; *Martin*, 817 F.2d at 182. The wording of section 328(c), which states that the court "may deny" compensation because of a conflict, supports this. *See In re Diamond Mortgage Corp.*, 135 B.R. 78, 97 (Bankr.N.D.Ill.1990). Notwithstanding this permissive language, a bankruptcy court's decision to award fees to an attorney with an undisclosed adverse interest is not irreversible and should be overturned if the court has made an error of law. *See In re Prince*, 40 F.3d 356 (11th Cir.1994); *In re Georgetown of Kettering, Ltd.*, 750 F.2d 536 (6th Cir.1984).

In *Prince*, the court reversed an award to a law firm acting as counsel to the chapter 11 debtor, denied the firm all fees and expenses and ordered disgorgement of all fees received because of the firm's conflicts of interest which prejudiced the debtor. 40 F.3d at 358–59. The firm filed an initial affidavit which failed to disclose its prior representation of (1) the debtor in his estate planing and divorce pursuant to which assets were transferred for no consideration shortly before the bankruptcy; (2) a corporation controlled by the debtor; and (3) the debtor's spouse in defending an action on her guaranty of an obligation of the debtor. The firm also failed to disclose it had received about $5,000 on account of an antecedent debtor within the 90–day period before bankruptcy. The firm filed two amendments to its affidavit, disclosing that it represented the debtor in the divorce and estate planning, which it represented did not affect the bankruptcy case. *Id.* at 359.

In reversing the lower courts' awards of compensation, the *Prince* court first noted its deference to a bankruptcy judge's discretion in awarding compensation. *Id.* Notwithstanding this discretion, the court believed complete denial of fees is proper "[w]hen injury to the debtor's estate occurs." *Id.* It concluded that the "egregious facts" of the case showed prejudice to the debtor's estate because the conflicts "deprived [the debtor] of a conflict-free, impartial, independent evaluation of the potential claims of and against his estate." *Id.* at 360. The court concluded that the firm's representation of the debtor's wife on the guaranty was an interest adverse to the estate because it deprived the firm of the ability to independently analyze the transfer from the debtor to his wife. *Id.* Refusing to speculate on whether a "conflict-free lawyer would have attacked the transaction," the court ruled that the firm could not impartially make decisions in the best interest of the client, stating:

> Because [the firm] could not have adequately and impartially served its client under the circumstances of this case, the bankruptcy court's award of fees was improper.... While a bankruptcy judge's discretion in deciding compensation cases under section 328 enjoys great bounds, it is not unlimited. A finding that [the firm] qualifies for fees in this case would render the impartiality requirements of the Bankruptcy Code meaningless. While a complete denial of fees may be extreme in some instances, this case requires nothing less. "This sanction serves to deter future wrongdoing by those punished and also to warn others who might consider similar defalcations." (citation omitted) Accordingly, we find that the district court's affirmance of the bankruptcy court's award of fees constitutes an abuse of discretion. (citation omitted).

*Id.* at 360–61.

■■■ In addition to complying with the requirements of bankruptcy law, attorneys

licensed to practice in the Commonwealth of Puerto Rico must conduct themselves in accordance with the ABA Model Rules of Professional Conduct. *See* Local District Court Rule 211(4)(B). In particular, an attorney may not represent conflicting interests without full disclosure and consent of all parties. *See* Rule 1.7. This principle is more strictly applied in bankruptcy because of the fiduciary duty owed by trustee's counsel to the estate. *See In re Diamond Mortgage Corp.,* 135 B.R. 78 (Bankr.N.D.Ill.1990).

█ Applying these principles to the facts of the present case, we conclude that in representing Rodríguez in the Northwestern Promotions case Otero held an "interest adverse to the estate" and was not "disinterested" within the meaning of section 327(a). In replacing Rodríguez with López the creditors were obviously dissatisfied with the manner in which Rodríguez had handled the case. The possibility of the estate having valid claims against Rodríguez was clear. Yet, for Otero to assert such claims would have been against his economic interest. It would have jeopardized his continued representation of Rodríguez and the compensation that would be due him for such services. Otero therefore had "a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors—an incentive sufficient to place those parties at more than acceptable risk—or the reasonable perception of one." *See Martin,* 817 F.2d at 180.

Otero's actions confirm the conflict. He refused to assert claims of mismanagement against Rodríguez despite Kagan's repeated requests to do so and the apparent, or at least arguable, merit of such claims. The report which he filed with the court trumpets the conflict. He called Kagan's charges against Rodríguez "unsubstantiated" and yet refused to investigate.

Otero contends no conflict existed because the bankruptcy estate of Northwestern Promotions held no interest which competed with any interest of the Debtor's bankruptcy estate. Lack of competing interests between the estates would only mean, however, that in serving as counsel to the trustee in Northwestern Promotions Otero did not *represent* an adverse interest. His economic interest in the representation nevertheless causes him to *hold* an adverse interest.

█ Otero points to the cost of the lawsuit brought by the United States, which was in excess of $280,000, and to the government's small recovery of $15,000 on its judgment against Rodríguez. From this he concludes the estate was benefitted rather than injured from his failure to bring suit. He argues there can be no disqualifying conflict absent actual loss or injury to the estate. His fiduciary obligations, however, rise far above such monetary measurements, including as they do the duty to avoid even the appearance of impropriety. *See Rome,* 19 F.3d at 60–61. "Furthermore, where court-appointed counsel has served under an undisclosed disqualifying conflict of interest, the bankruptcy court cannot always assess with precision the effect the conflict may have had either on the results achieved or the results that might have been achieved by following 'the road not taken'." *Id.* at 62–63 (citing *Woods v. City Nat'l Bank & Trust Co.,* 312 U.S. 262, 269, 61 S.Ct. 493, 85 L.Ed. 820 (1941)). That is especially true here. The United States commenced suit over 1½ years after Otero's employment. We will never know what assets of Rodríguez might have been available for recovery on the judgment if the claims against him were promptly asserted. It is because of such difficulties that courts equate a conflict of counsel with harm to the estate. *See Prince,* 40 F.3d at 360.

█ There remains the question of what effect Otero's conflict should have upon his compensation. Although in this circuit there is no bright line rule requiring denial of all compensation to counsel because of a conflict, a bankruptcy court is given broad discretion to do so, particular-

ly where as here counsel fails to make disclosure of the conflict. *See Rome*, 19 F.3d at 62. The bankruptcy court concluded that all compensation should be denied to Otero for services rendered while he had an actual, rather than potential, conflict. That determination was well within the court's discretion. *Id.* at 62–63.

The bankruptcy court nevertheless committed error in ruling that Otero had merely a potential adverse interest prior to May 16, 1995, the time he filed his report with the court. The court believed it was then when the potential conflict ripened into an actual conflict. But Otero's economic interest springing from his employment by Rodríguez, and the estate's potential claims against Rodríguez, were present from the beginning.

As counsel to the López, Otero was immediately required to investigate Rodríguez's actions as predecessor trustee and to sue him if appropriate. By virtue of the demands of both Kagan and the I.R.S., Otero knew from the commencement of his employment that the estate had potential claims against Rodríguez and that an investigation of Rodríguez's conduct as trustee was one of his central duties as counsel to the trustee. Otero could not possibly have adequately or impartially served the Debtor's estate under circumstances where Rodríguez was his client in another case. As the attorney for Rodríguez in Northwestern Promotions Otero had an economic relationship with Rodríguez that necessarily gave rise to a predisposition not to investigate and sue him. This predisposition would tend to lessen and likely decreased the value of the El San Juan Hotel bankruptcy estate. In the absence of immediate action and attachments, Rodríguez may have dissipated any assets available for satisfaction of the estate's claims against him.

Otero's independent professional view of the estate's causes of action could not have existed at the outset because of his relationship with Rodríguez. By virtue of that relationship, Otero was not free of personal interest. He did not have undivided loyalty to López in this case. Otero's simultaneous representation of Rodríguez as trustee of Northwestern Promotions compromised his duty of loyalty to the trustee and estate in this case. He could not possibly give objective and untainted advice on the issues relating to the estate's causes of action against Rodríguez, his client in the other matter. In short, Otero had a significant actual conflict of interest from the beginning of his representation that permeated the entire proceeding. The connection was not remote, but rather was significant and irreconcilable with his fiduciary duties to the Debtor's estate. The bankruptcy court properly ruled that no compensation should be paid Otero for services rendered while he had an actual conflict. Its award of 60% of compensation for services rendered by Otero prior to May 16, 1985 is inconsistent with that ruling and was based on the court's erroneous conclusion that no actual conflict existed until that date. We therefore reverse this award.

The circumstances of this case are unique. It presents an egregious example of malfeasance and defalcation by the trustee and inaction by his counsel in pursuing the former trustee. Rodríguez should have been immediately sued by the successor trustee as he was held civilly liable and criminally responsible for his mismanagement of and embezzlement from the El San Juan Hotel estate. Otero's adverse interest consisting of his representation of Rodríguez existed and was apparent from the outset. The target of Otero's inquiry on behalf of the El San Juan Hotel estate was also his client. The actual conflict of interest was undisclosed and is still denied at this date. For these reasons, we find that the bankruptcy court's sanction of disgorgement of fees received by Otero after May 16, 1985 and a 40% reduction of fees for prior services was inadequate and an abuse of discretion. Because of Otero's major conflict of interest which existed from the inception of

employment, Kagan's motion to vacate the order authorizing the employment of Otero as counsel to López should have been allowed. His employment was based on an undisclosed conflict of interest and thus was a nullity. The facts of this case are particularly egregious because Otero failed to disclose his connection with Rodríguez and to this date fails to appreciate the import of his actual conflict. Like the award reversed in *Prince,* an award of fees in this case would render the impartiality requirements of the Bankruptcy Code meaningless. The panel concludes that Otero is not entitled to any compensation and must disgorge all fees paid. Accordingly, the bankruptcy court's order awarding him fees and expenses is reversed. Otero shall disgorge all fees and expenses paid to date.

## VI. COMPENSATION OF LÓPEZ

Under section 326(d) of the Bankruptcy Code, "[t]he court may deny allowance of compensation for services or reimbursement of expenses of the trustee if the trustee failed to make diligent inquiry into facts that would permit denial of allowance under section 328(c) [governing compensation of professionals] ... or, with knowledge of such facts, employed a professional person under section 327 of this title." 11 U.S.C. § 326(d) (1994).

In response to a question from his counsel asking what inquiry he made of Otero's conflicts, López said: "Well, the inquiry we generally do. We asked the counsel whether he had any conflict in representing any of the creditors." Based on this testimony, the bankruptcy court ruled that López had made an "appropriate" inquiry. Because the court expressly recognized that section 326(d) controls, we construe this to be a ruling, in the language of the

statute, that López had made a "diligent inquiry into facts that would permit denial of allowance" of Otero's compensation.[12]

We disagree. By López's own admission, the "major reason" he was selected to replace Rodríguez was to investigate the management of Rodríguez. He also admitted at the hearing that he knew from the beginning of Kagan's allegations that Rodríguez had engaged in criminal acts and of the creditors' dissatisfaction with Rodríguez's management. In this context, a diligent inquiry to determine the existence of any adverse interest held or represented by Otero had to include, at a minimum, asking Otero whether he had any type of relationship with Rodríguez. In most cases it is presumably sufficient for a trustee to make a general inquiry as to the existence of adverse interests held or represented by a professional he wants to hire, or perhaps merely to rely upon the professional's affidavit stating the nonexistence of such interests. But not here. The raison d'être for López's trusteeship was the asserted mismanagement of Rodríguez. In these circumstances, the stock question posed by Otero falls far short of a diligent inquiry.

As additional support for its conclusion that López made a diligent inquiry, the bankruptcy court cites the lack of opposition to Otero's employment by creditors or by Kagan, who was "closely monitoring developments in the case." Although Kagan was not then a scheduled creditor entitled to notice, the court inferred from his monitoring of the case that Kagan was aware of the employment application. We find this reasoning unpersuasive, even aside from the question of notice. The statute imposes upon a trustee, not a monitoring party or a creditor, the duty to

---

12. The court also ruled that López had made an "appropriate" inquiry on conflicts when Otero filed his May 16, 1985 report. It based this ruling on López's reliance upon the (nonexistent) denial of a conflict made by Otero in the report, upon Otero being a reputable attorney with considerable experience in bank-

ruptcy law and upon the report having been considered by two bankruptcy judges. What we say about López's failure to make a diligent inquiry when he hired Otero applies in spades to what he failed to do following the report's filing.

make diligent inquiry concerning conflicts of counsel.

In concluding that the required inquiry was not made, we rule that the bankruptcy court misapplied the legal standard of diligent inquiry, not that the court made a clearly erroneous finding of fact. Relevant factual questions under this standard might involve, in other circumstances, what a trustee did in making the inquiry. But there is no question of that kind here. López admits all he did was to ask that one question. The ultimate determination of whether this is a "diligent inquiry" within the meaning of the statute is a conclusion of law. *See Reich v. Newspapers of New England, Inc.,* 44 F.3d 1060, 1070 (1st Cir.1995); *Field v. Mans (In re Mans),* 210 B.R. 1, 4–5 (1st Cir. BAP 1997), *rev'd, Field v. Mans,* 157 F.3d 35 (1st Cir.1998).

López's failure to make a diligent inquiry as to Otero's conflicts means that the bankruptcy court "may deny" him compensation. 11 U.S.C. § 326(d) (1994). This wording obviously grants a measure of discretion to the bankruptcy court. We believe, however, it would be an abuse of discretion for the court to allow *any* compensation to López for services rendered *after* he learned of Otero's representation of Rodríguez and *before* Otero resigned. We say this largely for the same reasons we deny Otero all compensation—the significance of the conflict and the action (or nonaction) of Otero and López that was obviously influenced by it. We also have in mind López's insensitivity to the conflict even when he learned of it.

The record does not disclose when López first learned that Otero represented Rodríguez in the Northwestern Promotions case. Kagan says, without rebuttal from López, that he told López of the conflict as soon as he discovered it from a search of bankruptcy court records. But he does not specify when this was, other than saying it was "soon" after his attempts in early 1984 to get López and

Otero to take action on his complaints about Rodríguez. It might well be that López already knew from Otero that Otero represented Rodríguez in that case.

We therefore remand the case to the bankruptcy court for it to conduct a hearing to determine when López learned of the Rodríguez representation. We require the court to· disallow all compensation for services rendered by López after that date and before Otero's resignation. We leave it to the discretion of the court as to what compensation, if any, López should receive for the services, if any, which he rendered prior to acquiring this knowledge. In its resolution of the question we nevertheless instruct the court to take into account López's insensitivity to the conflict.

## VII. REMOVAL OF LÓPEZ

It follows from what we have said that López must be removed as trustee. He has an adverse interest with respect the estate's reimbursement claim against Otero. This is so for a number of reasons: his long relationship with Otero in the case, his consent to Otero's conflict even after he learned of it, his failure to make a diligent inquiry on conflicts, and the reduction (or complete denial) of his compensation by reasons of that failure.

## VIII. REPORT TO UNITED STATES ATTORNEY OF ALLEGATIONS OF PERJURY BY OTERO

Finally, Kagan complains that the bankruptcy judge did not report Otero to the United States Attorney for investigation of perjury committed in his affidavit, as required by 18 U.S.C. § 3057. That statute provides:

(a) Any judge, receiver, or trustee having reasonable grounds for believing that any violation under chapter 9 of this title or other laws of the United States relating to insolvent debtors, receiverships or reorganization plans has been committed, or that an investigation should be had in connection therewith, shall report to the appropriate United

States attorney all the facts and circumstances of the case, the names of the witnesses and the offense or offenses believed to have been committed. Where one of such officers has made such report, the others need not do so. (b) The United States attorney thereupon shall inquire into the facts and report thereon to the judge, and if it appears probable that any such offense has been committed, shall without delay, present the matter to the grand jury, unless upon inquiry and examination he decides that the ends of public justice do not require investigation or prosecution, in which case he shall report the facts to the Attorney General for his direction.

18 U.S.C. § 3057.

The bankruptcy judge construed Kagan's request in his motion as a request to follow up on Judge Lamoutte's prior referral of Otero and Cuprill to the United States Attorney in 1987. Our review of Kagan's motion indicates, however, that this was not Kagan's request for relief. Rather, Kagan's request was that the bankruptcy court report Kagan's allegations of perjury, namely, that Otero falsely swore in his affidavit in support of employment that he was disinterested. The bankruptcy court correctly noted, and the partial transcript of the hearing on December 19, 1997 reflects, that on November 7, 1987 then Chief Judge Lamoutte referred Otero and Cuprill to the United States Attorney for investigation pursuant to 18 U.S.C. § 3057. Kagan concedes in his brief that the basis for the 1987 referral by Chief Judge Lamoutte's referral was based upon Kagan's allegations of perjury by Otero in executing his affidavit in support of his employment. As the 1987 referral was based upon Kagan's allegations of perjury, we hold that the bankruptcy court was correct in declining to "follow up" on the investigation. Kagan has cited no authority, and we have been unable to locate any, requiring a bankruptcy judge to do any more than report an alleged criminal violation. Indeed, the statute specifically states: "Where one of such officers has made such report, the others need not do so." Accordingly, no further proceedings were necessary or appropriate.

## IX. CONCLUSION

We therefore reverse the order of the bankruptcy court dated July 9, 1997 awarding Otero compensation and direct that Otero disgorge all compensation he has received from the estate. We remove López as trustee and remand to the bankruptcy court the matter of his compensation for proceedings consistent with this opinion. We affirm the court's refusal to make a perjury referral.

**SO ORDERED.**